ALICE POWELL, et al. v. N. L. GILBERT, et al.

Eastern Section. September 24, 1927.

Petition for Certiorari Overruled by Supreme Court, January 28, 1928.

W. R. Henderson and Child & Ailor, of Knoxville, for appellant. Donaldson & Montgomery, of Knoxville, for appellee.

SNODGRASS, J. The bill in this cause is filed to set aside a deed to a tract of land in Campbell county, represented to be 104½ acres, lying between the Powell river, which bounds it on the north and the Clinch river, represented as bounding it on the south. Bounded also on the east by the lands of Herman Ridenour and Alex Thompson, and on the west by the lands of George Grant and Lindsay Rouse. It is further described in the bill as being the lands deeded

by S. S. Richardson and wife to complainant Alice Powell, on April 8, 1924, and as found recorded in Deed Book 71, page 376 of the Register's office of Campbell county, Tenn.

The said lands had on November 9, 1925 been conveyed in trust to one E. M. Grant, to secure an indebtedness of $3,000 borrowed of the Equitable Life Assurance Society of New York.

The trade of the land by complainants to defendant Gilbert had been effected through defendant, J. H. Moore, a real estate agent in the City of Knoxville, for a certain coupon bond of the denomination of $1,000, numbered 37 and represented as one of a series of 425 bonds, 250 of which are of the denomination of $100 each, 150 of the denomination of $500 each and twenty-five of the denomination of $1,000 each, issued by what was called Automobile Vigilante Association of America, incorporated under the laws of the State of Delaware; also 500 shares of said company of the par value of $10 each, the authorized capital stock of said company being stated as $1,000,000; also two shares, Nos. 13 and 16 in the Automobile Identification Corporation of Knoxville, Tennessee, of no par value, but represented in the face of the certificates to be 200 shares, no par value.

The farm, while thus mortgaged to the Equitable Life Assurance Society, was shown to be worth at least $8,000, and while there is no doubt but what complainants Powell and wife were anxious to sell the property and get rid of the expense of the mortgage, still there is no evidence that they desired to give away their valuable equity. Powell listed the property for sale with the agent, Moore. It chanced that the defendant Gilbert had an office on the same floor of the building in which Moore's office was located. It chanced also that Gilbert came into Moore's office to use Moore's 'phone, and it also chanced that Moore knew Gilbert was in the market for a farm, and he introduced Gilbert and Powell, when the preliminaries were inaugurated. After some conversation Moore and Powell followed into Gilbert's office—Moore says at Powell's suggestion, and Powell says at Moore's suggestion, when the stock was displayed and the complainant impressed with its value. Gilbert appeared somewhat coy—there was another farm in his eye which was perhaps more desirable. At any rate an inspection of complainants' farm was arranged for later, and the agent and Gilbert went out to complainant's home where, with the somewhat active diligence of Mr. Moore, the trade was effected and the parties persuaded, notwithstanding the alleged indisposition of Mrs. Powell, to go to LaFollett and execute the deed to the land, which was turned over to defendant Gilbert, who assumed the payment of the mortgage. With the exception of the bond the stock was turned over to the complainants. Regarding the bond, it was expeditiously cabbaged to secure a note of $400 which de-

fendant Moore required to be executed at the time for alleged commissions. Upon discovering that they had been swindled, or had conveyed away their equity in the farm without consideration, complainants brought this suit to set aside the transaction as fraudulent, attaching the land and making both the purchaser and the agent, Moore, parties to the suit. They tendered back as far as possible the consideration, seeking to cancel also the note that had been executed for the commission.

The Chancellor heard the case upon the proof that was offered, found the transaction to be fraudulent, held both defendants culpable, set aside the deed and cancelled the note, finding and decreeing that the farm was worth approximately $8,000 at the time of the transaction, and that the bond and stock transferred to complainants in part payment for said farm were at the time practically worthless, and that the only consideration complainants received for said farm was the agreement by the defendant N. L. Gilbert to assume and pay the mortgage of $3,000; that both Gilbert and Moore represented to complainants that the securities mentioned were good and valuable, and that these representations were relied upon by the complainants; that defendants were experienced business men of intelligence, and that complainants were not on equal terms with the defendants in point of intelligence and experience; that their inexperience and the confidence they reposed in defendants were taken advantage of, and that complainants were therefore entitled to have the sale rescinded and to be restored to the position that they occupied previous to the sale of said farm. It was therefore decreed by the court that all right, title, claim and interest of the defendant N. L. Gilbert in and to the tract of land mentioned in complainants' bill be divested out of him and vested in complainant, Alice Powell; that the deed executed by complainants Alice Powell and W. R. Powell to the said defendant N. L. Gilbert be cancelled and for nothing held. It was further ordered that the $400 note which the complainants executed to defendant Moore for alleged commissions in said deal, being the note filed in this cause as exhibit to the deposition of said J. H. Moore, be cancelled and for nothing held, and the Clerk was directed to cancel the same and J. H. Moore perpetually enjoined from attempting to collect or transfer the same. The bond, filed as exhibit to the deposition of J. H. Moore, taken to secure the said note, was directed to be turned over to the defendant Gilbert, without prejudice, however, as to the rights of Moore or Gilbert in any litigation or transaction which may hereafter arise as between them. The certificates of stock, Nos. 13 and 16 in the Automobile Identification Corporation, and certificate No. 17 in Automobile Vigilante Association of America, filed as Exhibits A. B. and C. to the deposition of W. R. Powell, was directed to be turned over to defendant Gilbert. The decree provided, however, that it appearing that defendant N. L. Gilbert on

or about March 6, 1926 paid interest on the mortgage indebtedness on the farm in the sum of $165, and that said payment inured to the benefit of complainants, it was ordered that said complainant repay to said Gilbert the amount of his said interest payment, together with interest thereon from the date of said payment, and a lien was declared on said farm to secure the same. It was adjudged that defendant Gilbert pay two-thirds of the cost, and that defendant J. H. Moore pay one-third of the costs, for which executions were directed to issue.

Exceptions were taken to the decree by both defendants, but only defendant J. H. Moore perfected an appeal and he alone has assigned errors, seven in number, as to the denial of his right to collect the $400 note and subject the bond as security therefor.

Insistence is made that the assignments, which do not cite the record, are not in harmony with the rules of this court, but in the brief which accompanies there are citations upon which we have examined the record, upon which we concur in the findings and decree of the Chancellor.

Notwithstanding defendant Gilbert and others may have been induced to pay something of value for this stock by those responsible for foisting it upon the public, we are satisfied that at the time of its trade to complainants, if it had any value at all, it was so speculative and chimerical as that no justification can be found for' the representations that it was good or worth its face and draw in interest and dividends $500 a year, as was represented to these unsophisticated country people. Except to attempt to show what was paid for this stock and bond by defendant Gilbert when he bought it, and what was paid for some similarly issued by Dr. ————, there was no serious attempt to show it had any present value, or value at the time it was traded for the farm. We are satisfied that the Colonel Sellers optimism, which may have served to give it some value in the estimation of its progenitors, had faded before all the coupons were clipped from the bond, which had no further corpus, it seems, behind it, than the promise of deposits of certain proceeds which were to be the results of their selling transactions, which had themselves to survive the test of practical conditions or interested effort, which might flag for lack of nurture. There was testimony of bankers and business men that the stock was worthless or had no market value, corroborated by suspended coupon payments and a lack of knowledge upon the part of all as to any source of value or citus of responsibility, which could hardly have justified an agent in allowing such principals to even make, much less to make for them, a trade such as this is shown to have been, and to have seriously claimed a commission for valuable services rendered.

It is not a question we think of the complainants getting stock of some value and of taking a known risk after informed consideration,

534

but of ignorant, unsophisticated people being led to believe they were getting something of real value, affording a yearly income in interest and dividends, either known to be false by the agent, or without reasonable hope of realization. Gilbert was represented by Moore to Powell as reliable. In such case it would be immaterial if he had told them to investigate the stock. It is in the proof that both told them the stock was good, and it is apparent that they relied upon these statements. A man cannot participate in a transaction which robs the measurably defenseless and claim a clear bill of health, much less demand, either upon contract or the quantum meruit, a further exaction as a reward for services fruitful only in a guidance to injury and loss by his principals. We are satisfied that the Chancellor, as far as he was able, has reached the merits of the case, and that there is no merit in any of the assignments.

The assignments are therefore all overruled and the judgment of the lower court affirmed, with costs of this court adjudged against appellant and his securities.

Portrum and Thompson, JJ., concur.