# WILSON et al. v. HAYES et al.—193 S. W. (2d) 107.

Western Section. December 11, 1945.

Petition for Certiorari denied by Supreme Court, March 13, 1946.

W. R. Landrum, of Trenton (Robert P. Adams, of Trenton, administrator ad litem), for appellants.

Holmes & Holmes, of Trenton, for appellees.

ANDERSON, P. J. The relief sought in these consolidated cases, so far as material, is to set aside the sale of a house and lot made by H. Wilson, Trustee under a certain deed of trust executed by Henry D. Hayes and wife, Mattie Belle Hayes, to secure the Bank of Dyer in the payment of a note, and to set aside the sale of 138 shares of stock made by the bank through its president, H. Wilson, under authority conferred by an agreement

whereby the stock was pledged as collateral to secure the payment of a debt due the bank. Both the real property and the stock were purchased by H. Wilson at the respective sales. The chancellor set aside the sale of the house and lot but declined to set aside that of the stock. The respective parties appealed from so much of the decree as was adverse to them.

Mattie Belle Coulter Hayes died testate and her husband, Henry D. Hayes, qualified as executor of her will. He was also her sole devisee and legatee. Henry D. Hayes died without having completed the administration of the estate. In March, 1940, H. Wilson qualified as administrator de bonis non cum testamento annexo of Mrs. Mattie Belle Hayes, and administrator of the estate of Henry D. Hayes. On September 12, 1935, the deceased, Mrs. Mattie Belle Coulter Hayes, and her husband, Henry D. Hayes, had executed a trust deed conveying to H. Wilson, Trustee, a certain improved lot in the town of Dyer to secure the payment of a note payable to the Bank of Dyer in the principal sum of $800. The note was past due and unpaid when Mrs. Hayes died and it was not paid by her executor. After H. Wilson had qualified as administrator de bonis non cum testamento annexo of the estate of Mrs. Hayes, he, in his capacity as trustee named in the trust deed, advertised the property thereby covered for sale and sold it at public outcry, ostensibly to W. E. Baird for the price of $300. Baird however was bidding for H. Wilson, who was the real purchaser. H. Wilson, as trustee, thereafter excuted a deed conveying the property to Baird, but this deed has never been placed of record. Contemporaneously with this transaction, Baird executed a deed conveying the property to Wilson. The chancellor found, and the proof abundantly sustains him, that the

price paid for the property by Baird acting for Wilson was inadequate.

In this transaction, Wilson was acting in at least three different capacities: (1) As trustee in the trust deed, in which position he occupied a fiduciary relation to both the debtor and the creditor.; (2) as executive officer of the creditor bank; and (3) as an individual. That a trustee cannot buy trust property from himself in the manner attempted in this case is too well settled to require discussion. Such a purchase is always voidable at the election of the beneficiary unless, being sui juris and having full knowledge of the facts, he has affirmed it. Pomeroy's Eq. Jur., Vol. 2, Sec. 958; Gibson's Suits in Chy., Sec. 46; Cannon v. Apperson, 82 Tenn. 553, 579; Cowan v. Hamilton Nat. Bank, 177 Tenn.94, 146 S. W. (2d) 359, 367; Glenn on Mortgages, Vol. 1, Sec. 213, 108, 108.1.

Learned counsel for H. Wilson undertakes to draw a distinction which we are unable to follow. In the brief he says, ''I have not been cited to any case in Tennessee where that rule has been applied between grantors or grantors' heirs and trustee.'' The contention seems to be that an instrument conveying land to a trustee to secure the payment of a debt does not create a fiduciary relation between the trustee and the grantor in the trust deed. We think the law is otherwise. One occupying that position is an express trustee who owes a duty to the owner of the property conveyed in trust as well as to the owner of the debt secured thereby. Even if it be correct to say that in one sense his primary duty is to the latter, that is no ground for saying that he owes no duty at all to the former. Insofar as its being of a fiduciary nature is concerned, we perceive no sound basis for a distinction between his relation to all the parties having interest in the subject matter of the trust and that of any other trustee. Meath v.

Porter, 56 Tenn. 224, 228; Gibson's Suits in Chancery, Sec. 46, 57; 36 Am. Jur. 700, 701.

The question presented by the other aspect of the case arises upon a different state of facts, but involves the same fundamental principle.

At the time of her death, Mrs. Mattie Belle Coulter Hayes owed another debt to the Bank of Dyer. This was evidenced by a note, the payment of which was secured by certain collateral including 138 shares of the capital stock of the Dyer Fruit Box Mfg. Co. owned by her husband, Henry D. Hayes. A portion of this indebtedness was unpaid when H. Wilson qualified as administrator of the estates of Mrs. Mattie Belle Coulter and Henry D. Hayes. The note contained an agreement with reference to the collateral which, among other things, authorized the holder to sell the collateral without advertisement or notice at public or private sale with the right on the part of the holder "to become the purchaser and absolute owner thereof free of all trusts and claims."

There was also pledged as collateral to secure the payment of said obligation, a note payable to Henry D. Hayes executed by T. A. Callis and wife secured by a deed of trust on certain land. H. Wilson, as substitute trustee in this deed of trust, advertised the property thereby covered for sale on July 2, 1940. Some fifteen or twenty citizens of the community were present at this sale, but not enough was realized to pay the amount due on the Hayes note. Thereupon, and before the crowd dispersed, the attorney for the bank who was crying the sale at the instance of H. Wilson, president of the bank, and substitute trustee in the trust deed under which the land was sold, offered for sale to the highest bidder the 138 shares of stock in the Dyer Fruit Box Mfg. Co. H. Wilson bid 50¢ per share,

and there being no other bid, the stock was sold to him at that price.

With respect to this sale the chancellor found that "it was made in good faith and was free of fraud and that no one else could be procured on said property, that prior to said sale 90/7 of said stock had been offered by the administrator of the estate of Henry D. Hayes at public sale which was attended by a large crowd and no one could be procured to bid on the same even though the secretary of the Dyer Fruit Box Mfg. Company was present." He further found "that at the time of said sale the said stock was of little or no value, * * * that H. Wilson became the bona fide purchaser of said stock and that the complainants are not entitled to have said sale set aside for any reason."

We think this conclusion was erroneous.

 Under the law of pledge or deposit of property as collateral security for a debt, the pledgee acquires only a special property in the thing pledged with the right to sell upon default in the payment of the debt on reasonable notice to the pledgor to redeem the pledge. The absolute title to the thing pledged is not divested out of the pledgor until foreclosure or a sale on proper notice by the pledgee. Nashville Trust Co. v. First Nat. Bank, 123 Tenn. 617, 134 S. W. 311. Hence, at the time the sale in question took place, the absolute title to the stock in question was vested in H. Wilson as administrator of the estate of Henry D. Hayes. It was a part of the assets of that estate and Wilson held title thereto as trustee. So, in this transaction he again represented three adverse interests: He was administrator of the two estates; he was the executive officer of the pledgee bank, the owner of the debt secured by the pledge; and he represented himself as an individual when he purchased the stock. Clearly,

therefore, he purchased for himself as an individual an interest which he held in trust. This, equity will not allow. The applicable doctrine is stated by Mr. Pomeroy as follows:

"In the first place, when the trustee deals with the trust property, but not directly with the cestui que trust, and without the latter's intervention: The rule is inflexibly established that where, in the management and performance of the trust, trust property of any description, real or personal property, or mercantile assets is sold, the trustee cannot, without the knowledge and consent of the cestui que trust, directly or indirectly become the purchaser. Such a purchase is always voidable, and will be set aside on behalf of the beneficiary, unless he has affirmed it, being sui juris, after obtaining full knowledge of all the facts. It is entirely immaterial to the existence and operation of this rule that the sale is intrinsically a fair one, that no undue advantage is obtained, or that a full consideration is paid, or even that the price is the highest which could be obtained. The policy of equity is to remove every possible *temptation* from the trustee. The rule also applies alike where the sale is private, or at auction, where the purchase is made directly by the trustee himself, or indirectly through an agent, where the trustee acts simply as agent for another person, and where the purchase is made from a co-trustee. Finally, the rule extends with equal force to a purchase made under like circumstances by a trustee from himself. A trustee acting in his fiduciary character, and without the intervention of the beneficiary, cannot sell the trust property to himself, nor buy his own property from himself for the purposes of the trust." Pomeroy's Eq. Jur., Vol. 2, Sec. 953; see also, Vol. 3, Sec. 1075.

All of the authorities in this State on the question recognize this principal. Some of them are Tisdale v. Tisdale, 34 Tenn. 596, 64 Am. Dec. 775; Hawkins v. Byrn, 150 Tenn. 1, 10 261 S. W. 980; Cannon v. Apperson 82 Tenn. 553, 579; Cowan v. Hamilton Nat. Bank, 177 Tenn. 94, 146 S. W. (2d) 359; Gibson's Suits in Chancery, Sec. 46, and Note 33; Treadwell v. McKeon, 66 Tenn. 445, 450.

In Cannon v. Apperson, supra, it is said:

"No principle is better settled, or founded upon a sounder basis of legal ethics and positive law, than the principle which declares that whoever undertakes to act for another in any matter shall not, in the same matter, act for himself, and this without regard to the fact whether he has or has not made a profit by the act. Equity disallows the measure without reference to advantages or unfairness, and treats it as a breach of trust, charging the trustee accordingly: Perkins v. McGavock, [4 Tenn. 265], 3 Hayw. 265. The authorities are uniform to this effect." See Treadwell v. McKeon, 66 Tenn. 450.

We think it beyond doubt that the facts of the present case are within the scope of this principle. When Mr. Wilson qualified as the administrator of the two estates he undertook to act for all those interested therein, and when he bought the assets of the estate he undertook to act for himself. It would be difficult to state a clearer case of a violation of an unalterable principle of equity.

We are cited to the case of Davis v. Solari, 132 Tenn. 225, 177 S. W. 939, as sustaining the right of Wilson to become a purchaser at the sale in his own individual right. This, we think, is a misconception of the holding in that case. There, it was made clear that a purchase by one tenant in common of the entire interest at a sale for partition decreed by a chancery court was an exception, sanctioned by Statute [Code, Sec. 9165 et seq.], to

the general rule that persons bearing to each other the relation of tenants in common cannot buy in an outstanding title or other overhead claim except for the benefit of all. The reason for the exception is obvious. In such a case the protection of the chancery court is available to all of the interests, whereas in a private transaction if one occupying a trust relation acts for himself with respect to the trust property there is no one to protect and guard the cestui que trust who has an unqualified right to expect this protection from the trustee.

Nor does Fennel v. Loague, 107 Tenn. 239, 63 S. W. 1121, have any bearing on the question before us. It holds no more than that an administrator of an estate is not an express trustee of its heirs with respect to the reality, and the decision turned upon the absence of a fiduciary relationship.

But it is argued that in making the sale Wilson was acting as president of the bank who was the holder of the collateral; that it was his duty to protect the interest of the bank and if after his purchase "he held the property adversely to the interest he represented, which was the bank, no one but the bank could complain and the bank has fully ratified and approved his action in the matter." The fallacy of this argument seems obvious. Clearly, the property being sold constituted assets of the estate of which Wilson was administrator. If, in making the sale, Wilson represented the interest of the bank and in making the purchase he represented himself, then it must be inquired, who represented the estate? What became of the trust which Wilson voluntarily assumed? One clothed with a trust cannot by his act alone lay it aside like an old garment whenever he tires of it or it becomes inconvenient. Whatever may be to his personal interest, the obligation, once fixed, continues until dis-

charged either by operation of law or by an order of a tribunal having the requisite jurisdiction or pursuant to a valid agreement of the parties in interest.

In the present case the estate was entitled to all the skill, foresight and judgment possessed by the administrator wherever the assets were involved, and to say that he could deny this whenever he deemed it to his own interest, or to the interest of a third person, to do so, would be to open the way to the very end which the applicable principle is designed to prevent. It would be to permit the trustee whenever he chose to leave the cestui que trust to his fate, menaced by the known frailties of human nature. We know of no principle of law or ethics which countenances such a situation. Equity is much too practical for that. See Gibson's in Chancery, Sec. 46, Note 33.

Able counsel stresses the finding of the chancellor that at the time of the sale the stock was of little or no value. Under the principle above referred to, this is not a determinative question. However, there is not much doubt about the fact that Wilson would have a substantial profit in the transaction, if it should be allowed to stand. As stated, the sale was made on July 2, 1940. There was proven an offer in writing for the stock dated February 28, 1941, from a financially responsible person, of $8. Wilson himself said that he was unwilling to allow the stock to be resold, assigning as a reason therefor that the "value has increased since I have owned it." On March 17, 1941, 90.7 shares of the stock, sold at public sale, brought $4.50 a share.

There is also much said in the brief about the fact that Mr. Wilson and the secretary and treasurer of the Dyer Fruit Box Mfg. Co. were on unfriendly terms and that this suit was instigated by the latter for the purpose of preventing Mr. Wilson from becoming a stockholder.

We think this is immaterial to any question in the case. The right of the beneficiary of a trust to set aside a transaction of this kind is in no sense dependent upon the motives which prompt him to act.

█ It is said that certain of the distributees of the two estates ratified the transactions, and this appears to be true from the pleadings in the case. Accordingly, it is insisted that in any event the transaction cannot be set aside as to the interest of the latter. The rule is, that a sale of the kind under consideration can be ratified by one who is sui juris and has full knowledge of all the facts. But in the present plight of the record under review, it is not possible to ascertain the extent of the net interest of those alleged to have ratified the transaction. Both the real property and the stock stood as security for debts of the deceased owners. Both estates apparently are still in the process of being administered. For all we can know, the entire interest may be consumed in the process of administration, leaving nothing for those who it is said ratified the transaction. In the situation as it is presented to us, we think those interested in the estate are entitled to have the full value of the property in question applied to the payment of the debts secured thereby. This can be accomplished only by setting aside the transaction and ordering a resale. This was the course pursued by the chancellor with respect to the real property and we think it the one that must be taken in regard to the transaction involving the stock.

The result is that the decree of the chancellor, declining to set aside the sale of the stock, is reversed, and in other respects affirmed. A proper decree will accordingly be entered in this court and the case will be remanded to the chancery court of Gibson County for such further

proceedings as may be appropriately necessary. The cost of the lower court will be paid by H. Wilson; and the cost of the appeal will be paid by him and the sureties on his appeal bond.

Ketchum and Baptist, JJ., concur.