# BELL v. GAILEY et al.—260 S. W. (2d) 300.

Western Section. October 10, 1951.

Petition for Certiorari denied by Supreme Court, February 9, 1952.

W. H. Fisher, of Memphis for complainant.

W. C. Rodgers, McDonald, McDonald & Kuhn and Canada, Russel & Turner, all of Memphis, for defendant.

ANDERSON, P. J. The defendant, Ben Block Jones, appealed from the decree of the Chancellor awarding the complainant, Sarah Bell, a recovery against him in the sum of $500. The theory of the recovery was that in the sale of her home, Jones owed the complainant a duty arising out of a confidential relationship, which said duty he had breached.

The material facts are as follows: The complainant is an aged and rather illiterate Negro woman, somewhere between 75 and 85 years of age. For 37 years she had worked as a servant for a Mr. and Mrs. Vories. About 1917, with the help of Mr. Vories, she acquired a small home, known as 1067 South Walk Place. When, apparently due to advancing years, she retired, her daughter Delia, continued in Mr. Vories' employ. Mr. Vories for a time paid the complainant a pension of $6 a week. The complainant has a son by the name of Walter Prince, who, the preponderance of the proof shows, was an inebriate. After an absence from Memphis of a number of years, Walter returned and moved into the complainant's home. He was out of work for a considerable period, during

which time he apparently had no source of livelihood. Mr. Vories stopped the payment of the pension when he suspected that a good part of it was being dissipated by the indulgencies of Walker, who, he considered, should take care of his mother.

The defendant, Ben Block Jones, is a real estate broker, who was also in the ''loan business''. Some time prior to the transaction here in question, the complainant and her son Walter approached Jones to get a loan on the property. This was arranged and a note or notes were executed aggregating $302, secured by a mortgage on the property. These notes were sold by Jones to C. A. Tindall for about $242, out of which the complainant was given $200, the $42 being applied to taxes and expenses and a small commission to Jones.

Later, the complainant decided to sell her home and called upon the defendant Jones to sell it for her. Jones was already familiar with the propriety by virtue of having procured the loan on it. He nevertheless went out to the house and had a conference with the complainant and her son Walter. He was informed that the complainant wanted the property sold for cash. He says that he told her she could get a much better price by selling it ''on time''. He claims that she persisted in wanting cash, so he decided to buy it himself. He accordingly had her sign a contract for the sale on a printed form which he had brought with him, and which, significantly enough, had already been filled out, thus indicating his intention. This form is dated November 16, 1949. It recites that the owner has received from Ben Block Jones $200 as earnest money in part payment for the property described, and further, that the owner had sold and agreed to convey the property to Jones or his nominee and that Jones agreed to purchase said property for the sum of $1140 payable

$850 in cash and the balance by the assumption of a mortgage in the principal sum of $290. The contract is signed by the complainant and her son Walter as sellers, and also by Jones as a purchaser. Walter had no interest in the property.

Apparently at the time the contract was signed, Jones made out and delivered to Walter a check for $200 in part payment of the purchase price. This check was payable to Walter and complainant jointly. Just why is not apparent. Walter cashed it at a liquor store in the neighborhood. The transaction was not consummated, however, until November 19th, (after Jones had re-sold the property), when the defendant Jones delivered to the complainant a check payable to her in the sum of $650, representing the balance of the purchase price after the mortgage debt had been satisfied.

In the meantime, Jones had advertised the property for sale in a newspaper. This came to the attention of one James Gailey on the morning of November 10, 1949, Gailey went to look at the property and found the complainant and her son Walter there. Upon inquiry, Walter told Gailey that it was his mother's property and that if he was interested in buying it, "Mr. Jones was the man to see". Thereupon Gailey called Jones' concern, the Block Realty Company, and a salesman took him out to see the property again. A sale was agreed upon at a price of $2500, on terms of $300 cash and the balance in a series of notes secured by a mortgage on the property payable to bearer, 60 of which were in the sum of $20 each due monthly, and one in the sum of $1000 due November 19, 1954. This deal was consummated and Jones sold the notes to C. A. Tindall for $1500 or a discount of $700. The deed to Gailey was direct from complainant. The result was that Jones realized out of the transaction

$1800 in cash, whereas he had bought it from the complainant for $1140.

Following his deal with Gailey, Jones, as said, completed his transaction with the complainant by giving her the check for $650.

The complainant's daughter, Delia, knew nothing of these transactions until after they had been consummated and her mother was homeless. Upon discovering what had happened, she consulted counsel and caused the bill in this case to be filed.

In addition to the defendant Jones, Gailey and wife, Tindall, and the complainant's son Prince, were all made defendants. By way of relief the complainant sought to have the transaction set aside on the ground that a fraud had been perpetrated on the complainant. The son Walter was joined on the theory that he had aided and abetted Jones. The Chancellor dismissed the bill as to all the defendants except Jones, and of this there is no complaint. In awarding a recovery for $500 representing the profit made by Jones in the transaction, he allowed Jones credit for a 5% real estate agent's commission and certain expenses.

The foregoing facts make a clear case for relief against Jones under well settled principles of equity. McNeill v. Dobson-Bainbridge Realty Co., 184 Tenn. 99, 195 S. W. (2d) 626; Pomeroy's Equity Jurisprudence, Vol. 2, Sec. 953; see also, Vol. 3, Sec. 1075; Gibson's Suits in Chancery, Sec. 46. Here, we have upon the one hand, an aged Negress, ignorant of business transactions and property values, almost if not entirely illiterate. Her testimony indicates that if she were not senile she was fast approaching that state. Upon the other hand, Jones is a white man, fully versed in property values and in the negotiation of loans thereon. What he had in mind is in-

dicated by the fact that he arrived on the scene with a form of contract already filled out and ready for complainant's signature whereby, when executed, complainant agreed to sell the property to him or his nominee.

Somewhere in the course of the conference about the matter, or the conference about the loan he had previously negotiated for complainant, he manifestly discovered that he could buy the property for cash at a figure that would enable him to make a substantial profit. He thereupon undertook to and in fact did switch his position from that of a confidential agent to that of a purchaser. He bought the property and resold it at the profit indicated before he actually completed the transaction of purchase from the complainant by the full payment of the amount due.

██ ██ Equity will not tolerate such a deal. As the Chancellor pointed out, it is not possible, and we may add, it is not necessary, to determine just when the defendant switched from his status of real estate broker to that of purchaser. There is no question but what on both occasions, he was consulted by the complainant in his capacity as a broker and that in that capacity he undertook to advise her about the loan and later about the sale of the property. There was thus established a confidential relationship which amounted to a trust, and such a relationship once assumed continues until discharged either by operation of law, by an order of a tribunal having the requisite jurisdiction, or pursuant to a valid agreement of the parties in interest who are fully competent to contract and fully conversant with all the facts and with their respective rights and duties. Wilson v. Hayes, 29 Tenn. App. 49, 193 S. W. (2d) 107.

Much is said in the defendant's brief about the fact that the complainant wanted to rid herself of the property

for a cash consideration rather than defer payment of any part of the purchase price, in order to put herself in position to draw an old age pension; and it is argued that this is the reason that she was willing to sacrifice the property. We are unable to perceive how the defendant can draw any comfort from that fact, if it is a fact. The defendant knew full well that notes secured by a mortgage on real property were readily sold. In fact, he was in that line of business as well as in the real estate business and, as already pointed out, did in fact sell the mortgaged notes he took from Gailey. This being the case, as soon as he learned that the complainant wanted cash, it was his duty, considering the relationship between the parties at the time, to advise her of that fact, since he had already advised her that a better price could be obtained if the property were sold on time rather than for cash. She was entitled to all of the agent's skill, knowledge and foresight, and the defendant could not take advantage of her ignorance in this respect to make a profit for himself by becoming the purchaser at a reduced price or otherwise. Wilson v. Hayes, supra, 29 Tenn. App. at page 58, 193 S. W. (2d) 107.

But the principal contention is that the Chancellor granted the relief on a theory not supported by the averments of the bill and in fact one which was repugnant to said averments. This is true. But the averments of the defendant's answer, considered in the light of his testimony, as they must be, are in his way. After denying all of the material allegations of the bill, Jones, in his answer, avers in substance that he is in the real estate and loan business; that whenever, in the conduct of this business, he discovers that he can "buy a piece of property at a price so that he can sell it and make as much as a regular real estate commission or more, he does so, this being the

very purpose of the existence of his firm and business"; that complainant requested him to procure for her a loan, and growing out of this transaction the defendant discovered that the complainant desired to sell the property; that he thereafter purchased it from her for $1140 cash and sold it for $2500.

The defendant testified in substance that the complainant wanted him to handle the sale of the property for her, and that he undertook to do so, but that she wanted to sell it for cash and he wanted her to sell it "on time", believing, as he explained to her, that it would bring a better price, but that the complainant did not want it sold that way, and that he finally bought it from her himself for cash.

■ It is settled that "where the answer denies the precise case alleged in the bill, and sets up a different case, if the complainant fail to prove the case he alleges, and he be entitled to any relief on the case set up in the answer, the Court will grant him such relief". Jordan v. Jordan, 145 Tenn. 378, 239 S. W. 423; Gibson's Suits in Chancery, Sec. 558.

■■ It may be true that the averments of the answer with respect to the origin and duration of the confidential relationship in relation to the particular transaction are not as precise as they might have been. But at most this is no more than a defective statement of a good cause of action, which was cured by the defendant's testimony and the decree. See, James v. Williams, 169 Tenn. 41, 50, 82 S. W. (2d) 541. The complainant is entitled to the relief granted on the case as made by the answer and shown by defendant's own testimony.

■ It is said that the Chancellor should have dismissed the bill because the suit was not instituted in good faith, but for the use and benefit of others not interested.

The reference is to the fact that the complainant's daughter Delia caused the bringing of the suit when she discovered what had happened. It is true also that she is actively interested in the prosecution of the case, but we do not see how that can help the defendant. It was the daughter's duty to protect her aged mother's rights by every legitimate means at her command. If the son Walter had been as diligent in the performance of his duty in this respect, it is likely the transaction would not have been consummated.

We think the other questions made by the defendant are equally without merit.

The result is that the decree is affirmed at the cost of the defendant.

Baptist and Swepston, JJ., concur.