CHARLES HIGH SMITH, Executor of the Estate of
MINNIE RADFORD SMITH, Appellant-Complainant,
v. CLIFF HOOPER, Appellant-Defendant.
—438 S.W.2d 765.

Middle Section. August 30, 1968.

Certiorari Denied by Supreme Court January 20, 1969.

Petition to Rehear Denied March 3, 1969.

168

Harold Howser, Gallatin, Guy Yelton, Lafayette, for appellant-complainant.

Carmack Cochran, Dewey W. Pedigo, Nashville, for appellee-defendant.

PURYEAR, J. For simplicity of narration we will refer to the parties as they were designated in the trial Court wherein Charles High Smith, Executor, was complainant and Cliff Hooper, and W. S. Cartwright, were defendants. The only defendant who appealed was Cliff Hooper and, therefore, W. S. Cartwright is no longer involved in the case, since the suit was dismissed as to him by the trial Court and no appeal was prayed from that portion of the decree dismissing the suit as to Cartwright.

The original complainant in the suit was Mrs. Minnie Radford Smith, who died while the suit was pending in the lower Court, and it was revived in the name of Charles High Smith, as executor of her estate.

The salient facts of the case, briefly stated, are as follows:

In the fall of year 1964, Mrs. Minnie Radford Smith, mother of the complainant, Charles High Smith, owned a tract or parcel of land in the 25th Civil District of Wilson County, Tennessee, containing 42.62 acres, which she desired to sell.

The defendant, Hooper, was a licensed real estate broker, doing business under the name of Hooper Realty Company, and one of his agents and employees was T. L. Clark.

In October or November, 1964, Clark contacted Mrs. Smith and she listed said tract or parcel of land for sale with Hooper, which transaction was handled for Hooper by and through his agent, Clark. Since Mrs. Smith was in poor health, her son, the complainant, Charles High Smith, assisted her in listing her property for sale and, according to complainant's testimony, the asking price was somewhere between $40,000.00 and $45,000.00 and the property was listed for a period of ninety days.

In his discovery deposition, Hooper testified that the listed price was $40,000.00 with a ten per cent commission to him for selling. However, the listing contract was not introduced in evidence.

Hooper advertised the property for sale in two Nashville newspapers, and also put out signs and shortly before the ninety days listing period was to expire, Clark presented to Mrs. Smith a contract of sale in which "Hermitage Enterprises" appeared as the purchaser. Mr. Smith refused to approve this sale, after he found that Hermitage Enterprises was a corporation owned by Hooper, his wife and one E. H. Bayers.

Clark later presented a contract in which the purchaser was shown as "W. S. Cartwright or his assigns", for a

consideration of $35,000.00. This contract recited a deposit of earnest money in the amount of $1,000.00 and provided that the purchase price would be paid upon terms of $10,000.00 cash and the balance due on or before three years in three equal annual payments, the first payment being due and payable one year from date of deed.

Thereafter, a deed was prepared by Mr. Elmer Woolard, an attorney at Lebanon, Tennessee, which deed was signed by Mrs. Minnie Radford Smith and W. S. Cartwright, by the terms of which said property was conveyed to W. S. Cartwright for the consideration of $35,000.00, of which $10,000.00 was paid upon delivery of deed and for the balance of $25,000.00, Cartwright executed his note payable in three installments and conveyed the property to a trustee for the purpose of securing payment of said note. Mr. Woolard handled the closing of the transaction and the balance of the $10,000.00 cash payment, after deducting $1,000.00 earnest money, was paid by Mr. Woolard's check. This deed is dated January 22, 1965, and the transaction was closed on that date.

On the 4th day of January, 1966, Cartwright sold this same property to Baltz Brothers for the sum of $55,000.00.

On the 19th day of January, 1966, Mrs. Minnie Radford Smith filed an original bill in this case against Hooper and Cartwright, which bill is quoted in the Chancellor's opinion hereinafter set forth.

To this bill, Hooper and Cartwright filed separate answers, which answers are also summarized in the Chancellor's opinion.

The discovery depositions of Hooper and Woolard were thereafter taken and the case was tried upon these discovery depositions and oral testimoney introduced in open Court.

The Chancellor, Honorable W. M. Leech, filed a well reasoned memorandum opinion, which is as follows:

"This suit to recover from a real estate broker based upon alleged fraud and bad faith on the part of the broker, Cliff Hooper, d/b/a C. Hooper Realty Company, in his sale of certain real estate as agent for the Complainant, Minnie Radford Smith. The bill alleges the following:

'During the fall of 1964, the defendant Hooper by and through his agents and representatives, solicited a listing on a tract of 42.62 acres of land in the 25th Civil District of Wilson County, Tennessee, which your complainant was desirous of selling. Your complainant, relying on the defendant Hooper's representations, express and implied, that he would obtain the highest dollar possible for said property and otherwise look after her interest in regard to the sale of same, listed said property with the said defendant for a period of ninety (90) days.

'During said ninety (90) day period the defendant Hooper produced a contract of sale for your complainant's signature, allegedly selling said property to the defendant, W. S. Cartwright for the sum of Thirty Five Thousand Dollars ($35,000.00). The defendant Hooper advised your complainant that this amount was all the property was reasonably worth, and advised her to accept same.

'Your complainant, relying upon the advice, counsel, knowledge and good faith of the said defendant Hooper,

did thereafter, on January 22, 1965 convey said property to the defendant Cartwright and paid the defendant Hooper the sum of Fifteen Hundred ($15,000.00) Dollars as commission on the sale.

'A certified copy of the deed conveying said property to the defendant Cartwright is filed herewith and marked ex. "A" to this bill but need not be copied in the issuance of process.

'Your complainant is informed and believes, and based on such information and belief, charges that the defendant Cliff Hooper was the real party who purchased said real estate, and that the defendant Cartwright was his agent or partner in said transaction. Your complainant was not advised of the adverse interest of the defendant Hooper, but had placed her trust and confidence in him to advise her with fidelity and skill.

'Complainant would further show that the property was sold and conveyed to Robert J. Baltz, et al, by deed dated January 4, 1966, for a consideration of $55,000.00 (Fifty Five Thousand Dollars). A certified copy of said deed is filed herewith and marked exhibit "B" to this bill but need not be copied in the issuance of process.'

The defendants have answered and admitted the contract between complainant and the defendant Hooper, and admitted the sale to Cartwright, but denied any bad faith or fraud. The answer also affirmatively alleges that the complainant was fully advised of the interest which Hooper had in the sale, it being alleged that he only assisted Cartwright in financing the sale and that complainant was fully advised of this fact.

During the pendency of this cause the complainant, Mrs. Minnie Radford Smith, died and the cause was revived in the name of Charles High Smith, Executor.

When the Executor was called as a witness the defendants objected to his testimony before he had testified to any facts, on the theory that under Section 24-105 T.C.A. he was not a competent witness to any fact. This is an erroneous interpretation of the statute.

In Minnis v. Abrams, 105 Tenn. 662, [58 S.W. 645], the Court said:

'The policy of the statute is to provide that, when one of the parties to a litigated transaction is silenced by death, the other shall be silenced by law. 1 Whart.Ev. 466. It will be observed that the statute simply excludes proof of transactions with or statements by the deceased, but does not make the surviving party incompetent as to other matters. We do not think proof by the surviving party that he had a letter in his possession, and that the letter is in the handwriting of the deceased, is in contravention of the statute. These are independent facts which we hold may be proven by either party to the suit.' (underscoring added).

In Waggoner v. Dorris, 17 Tenn.App. 420, 68 S.W.2d 142 the Court said:

'(12) 2. The insistence that the parol evidence should have been stricken because it related to a transaction between defendant and Waggoner, the deceased, is not well made, for the reason that the statute (Code, 9780) provides that "neither party shall be allowed to testify against the other as to any transaction with or statement by the testator, intestate, or ward." The transaction and statement were only between Dorris and Collins, upon which the liability of Dorris depended, and the deceased took the note subject to the equities existing between the original parties, as it was nonnegotiable. In no sense were they had with deceased.

Where the statute merely prohibits the witness from testifying as to transactions and communications with the deceased, he is not precluded from testifying with regard to transactions between himself and third persons in which the decedent did not participate. 30 Amer. & Eng.Ency. of Law (2d Ed.) 1050, 1051; 40 Cyc. 2330.

(13) ''Transactions with the intestate refer to things done in his presence, to which he might testify of his personal knowledge, were he alive, and not to transactions out of his hearing and presence, though they may affect the liability of his estate.'' Morris v. Norton (C.C.A.) 75 F. 912, 922.'

In Newman v. Tipton, 191 Tenn. 461, 234 S.W.2d 994, The Supreme Court in an opinion by Chief Justice Neil said:

'The provisions of this statute, and similar statutes in all other jurisdictions, have given rise to countless decisions as to what constitutes a ''transaction'' between parties in interest and one who is deceased. We have no case dealing with the question made on this appeal. All the cases from all jurisdictions hold that the statute was primarily intended to guard against an evil which might result from testimony of the living against the dead; that death having silenced the one, the law silences the other. McDonald v. Allen, 67 Tenn. 446; Bingham v. Lavender, 70 Tenn. 48. In a foot note to the above Code Section it is said: ''This statute can not be extended by the courts to cases not within its terms, upon the idea that they fall within the evil which was intended to be guarded against. As an exception, it must be strictly construed *as against the*

*exclusion of the testimony, and in favor of its admission.''*

(Emphasis supplied.) Citing numerous cases.

The Executor's testimony was not as to transactions between the deceased party but was about transactions and statements made by the defendants and others to him and there is in fact no dispute as to the transactions between the defendants and Mrs. Minnie Radford Smith, deceased.

Mr. Smith testified that the property was listed by him with a Mr. Clark, an agent for Hooper Realty Company to be sold for $45,000.00 and that all that the defendants did was to place an advertisement in the newspapers along with other property which the defendant, Hooper, had listed with him for sale and that a small sign ''For Sale'' was erected on the road leading to the premises. That before the 90 days had expired Clark came to him and told him that he could sell the property to Hermitage Enterprise Corporation for $35,000.00, and the sale was refused. The undisputed proof is that this corporation was in fact owned by Hooper, a fact which was not disclosed to either Mrs. Smith or her son. Thereafter Clark brought a contract to sell the land to the defendant, Cartwright, for the sum of $35,000.00 and the contract was accepted. There is no dispute about this. Clark did not testify and since he was an agent for the defendant and was available as a witness to dispute the testimony of Mr. Smith if it were not true, the Court will presume that he would testify to the same facts.

It is unnecessary to quote from the testimony as to what took place thereafter, and it is only necessary to say that by a preponderance of the proof, if not by the undis-

puted proof, Cartwright was not able to secure the down payment and that Mr. Woolard and S. H. Griggs, who was connected with the C. Hooper Realty Company in an official capacity, and C. E. Hooper entered into an agreement with Cartwright that the four of them would borrow the down payment to pay Mrs. Smith and that Hooper would then have the exclusive listing of the property for resale, and that upon a resale they would all share one-fourth in the profits. They then borrowed an additional $5,000.00 and purchased a bulldozer to do some work on the property.

This arrangement was not an assistance to Cartwright in the financing of this sale, but was in fact a joint venture whereby Cartwright held legal title to the land for the benefit of all the members of the joint adventure. Cartwright and Woolard had a right to form a joint adventure in the holding of the property, but Hooper and Griggs did not have such a right without making a full disclosure to Mrs. Smith of their interest in the property, and a full disclosure was not made. What was done in this case could not be called assisting Cartwright in the financing of the down payment. The property was held in the name of Cartwright for approximately one year when Hooper sold it to Baltz Brothers for the sum of $55,000.00 Dollars and the transaction was handled by Hooper.

From the proceeds of this sale, Hooper paid to Mrs. Smith $25,695.82 the balance due on her note. $15,127.00 was paid to the Lebanon Bank in payment of the note for the down payment and the purchase of the dozer, which the parties apparently own jointly. $387.50 was for the expenses of the sale, title and preparation of deed, etc., and $85.50 for transfer tax and recording.

Hooper first deducted from the sale to Baulch Brothers a 10% commission of $5,500.00 and he had previously received a commission of $1,500.00 on the sale to Cartwright, thus he had received in commission on the sale of property listed with him of $7,000.00, plus a profit of $2,004.42 and another member of his firm had received a profit of $2,007.42. It is true that only one-half of the $2,007.42 was paid to Hooper and Griggs at the closing of the sale to Baulch Brothers as they had taken a third party into the joint venture prior to the sale but this is immaterial as to the interest acquired by Hooper in this transaction growing out of a fiduciary capacity.

Under these facts as to the defendant, C. E. Hooper, the case of McNeill v. Dobson-Bainbridge Realty Co., et al., 194 [184] Tenn. 99, 195 S.W.(2d) [626] applies. In that case the court said:

'The fact that in a given case the owner of the property may have received what seemed to be or what in reality was a fair price for the conveyance to her agent is of no consequence in the application of this rule which constructs the trust. When the agent has been guilty of a breach of a material duty owed his principal by reason of the fiduciary relation of principal and agent. It was so decided in our leading case of Tisdale v. Tisdale, 34 Tenn. 595 [596], 608, 64 Am. Dec. 775, wherein this court said: ''where confidence is reposed, duties and obligations arise which equity will enforce. A trustee cannot throw off the trust at pleasure, to the injury of the cestui que trust. He will not be allowed to mix up his own interests and affairs with those of the beneficiary. This doctrine has its foundation not so much in the commission of actual fraud, but in that profound knowledge of the human heart, which dictated that hallowed petition, 'lead us not into tempta-

tion, but deliver us from evil' and that caused the announcement of the infallible truth, that 'a man cannot serve two masters.' The right to sell and to buy cannot exist in the same person, because of the antagonistic interest in the two positions. Hence the fairness or unfairness of the transaction, and the comparison of price and value, or the existence or absence of actual fraud, are not permitted to enter into the consideration of the court. It is enough that the relation of trustee and cestui que trust existed. This appearing, the investigation is at an end, and the doctrine applies with all its force." This case is frequently cited and widely quoted as a clear statement of the general rule. Its decision above quoted is grounded upon the reason which gave origin to the creation by equity of constructive trusts; namely, to remove from fiduciary relationships the temptation to take advantage for personal gain of opportunity necessarily presented by such a relationship to commit a fraud without much danger of sufficient proof to establish such fraud.

The principle is stated in this language in 21 Ruling Case Law, page 830, wherein the relations between principal and agent are under discussion:—'The doctrine is not based on the idea that the transaction is necessarily an injury to or a fraud upon the principal, but on the idea of closing the door to temptation to fraud and keeping the agent's eye single to the rights and welfare of his principal. And the interdiction is enforced with a strong hand in courts of justice. The principle is one of prevention, not remedial justice, which operates therefore, however fair the sale may have been—however free from every taint of moral wrong." '

The plea that Mr. Woolard was the attorney for Mrs. Smith in this transaction and that she therefore had independent legal advice is not supported by the proof. Mr. Woolard was approached by Cartwright to draw the deed and examine the title and he did not attempt to act for the complainant, nor did he prior to the closing of the sale to Cartwright, advise Mrs. Smith or her son of the interest that Hooper and Griggs were taking in the property, nor was he under any duty to do so. This was a duty imposed upon Hooper. It was clearly his duty to advise Mrs. Smith that he was to receive one-fourth of the profits from a resale as well as an additional 10% commission and that a member of his firm would likewise share in the profits of a resale.

Complainant is entitled to recover from the defendant, C. E. Hooper, the difference between the sale to Cartwright and the sale to Baulch Brothers less a 5% commission, less $4,015.64 paid to Cartwright and Woolard for their interest in the land, less $672.50 for taxes and the closing expense of the sale to Baulch Brothers. This leaves $12,461.86 for which the defendant, C. E. Hooper is liable.

As to the defendant, Cartwright, the bill is dismissed.

A decree in accord with this memorandum will be prepared and entered on the minutes of the court and this memorandum will be filed as a part of the technical record but need not be copied on the minutes.

This the 12th of October 1967.

/s/ W. M. Leech
Chancellor.''

(Tr. pp. 27-32 inclusive)

An error of $100.00 was made in the calculation appearing in the Chancellor's opinion, but this error was cor-

rected in the final decree, in which the complainant was awarded a recovery of $12,561.64 against Hooper and the suit was dismissed as to Cartwright.

From the decree of the Chancellor, Hooper has prayed and perfected a broad appeal and also, from that portion of the decree allowing Hooper a credit of $4,015.64 paid to Cartwright and Woolard and failing to charge Hooper with $1,500.00 commission paid to him on the original sale, the complainant has also prayed and perfected an appeal.

## DEFENDANT'S ASSIGNMENTS

The defendant, Hooper, has filed fifteen assignments of error.

We will consider and discuss assignments numbered 1, 2, 3, 4, 5 and 6 together, since in different aspects, they raise the following question:

At the time the deed from Mrs. Minnie Radford Smith to W. S. Cartwright was made and delivered, was Hooper acting in a fiduciary relationship for Mrs. Smith,

Defendant insists that his relationship as an agent for Mrs. Smith terminated on December 4, 1964, at the time she and Cartwright made and entered into a contract of sale by the terms of which Mrs. Smith agreed to sell the property to Cartwright for $35,000.00 and to pay Hooper a commission of $1,500.00.

Cases in Tennessee and other States are cited by defendant's counsel in which it has been held that a real estate broker had completed the performance of his obligation and earned his commission when the written contract of sale was signed by the parties.

We do not consider these cases controlling, because the Tennessee cases, which are the only ones we are required to follow, deal primarily with the obligation of the agent to find a purchaser who is ready, willing and able to purchase the property. These cases do not purport to deal with the basic problem here, which involves the obligation of the agent to deal fairly with his principal and reveal to her any circumstances which his trust requires him to reveal for the purpose of promoting the best interest of his principal.

There is abundant evidence in this case, both direct and circumstantial, which adequately supports the conclusion of the Chancellor that the real purchasers of the property, when it was sold by Mrs. Smith, were Hooper, Cartwright, Woolard and S. H. Griggs, the latter of whom is one of Hooper's salesmen.

Although the personal interest of Hooper as a co-purchaser of the property was not made to appear until the deed was executed on January 22, 1965, there are many circumstances in evidence which point to the conclusion that he had a personal interest in it as a co-purchaser at the time the contract was executed on December 4, 1964.

It is not necessary to set forth these circumstances in detail, but we do point to the following which appear in the evidence:

1. Through his agent, Clark, Hooper first tried to purchase the property for Hermitage Enterprises, which was a corporation owned by himself, his wife and one E. H. Bayers.

2. Hooper's admission in his discovery deposition, that prior to the purchase of the property, he and Cartwright had jointly purchased several farms.

3. The fact that one S. H. Griggs (one of Hooper's salesmen) shared in the distribution of profit on the sale from Cartwright to Baltz Brothers.

The defendant insists that it was only after Cartwright failed to raise enough money to make the cash payment of $10,000.00, that he, together with Mr. Woolard and Mr. Griggs, assisted Cartwright in obtaining the cash payment, but the evidence does not preponderate in favor of this insistence.

The defendant also insists that he instructed his agent, Clark, to inform Mrs. Smith that it was necessary for Woolard, Griggs and himself to assist Cartwright in obtaining the necessary funds to make the cash payment, but Clark did not testify and no reason is offered for his failure to do so.

The complainant has expressly denied that any such full disclosure of the circumstances were made to him or his mother.

██ Of course, the case comes to us for review de novo under T.C.A. Section 27-303, accompanied by the usual presumption that the decree of the Chancellor is correct unless a preponderance of the evidence is otherwise. As this Court has said in Roberts v. Ray, 45 Tenn. App. 280, 322 S.W.2d 435, and Clardy v. Clardy, 23 Tenn. App. 608, 136 S.W.2d 526:

> "The Trial Judge's findings are entitled to great weight in such a case as this where he saw and heard the witnesses, and observed their manner and demeanor on the stand, and is, therefore, in much better position than we are to judge the weight and value of their testimony."

Although the discovery depositions of Woolard and Hooper were taken and portions of them introduced in evidence, the case was tried principally upon oral proof and both of these witnesses also testified orally before the Chancellor.

■ We find no merit in the defendant's insistence that he was not acting in a fiduciary capacity for Mrs. Smith at the time the deed to Cartwright was executed.

■ As this Court said in Bell v. Gailey, 37 Tenn.App. 17, 260 S.W.2d 300:

"Equity will not tolerate such a deal. As the Chancellor pointed out, it is not possible, and we may add, it is not necessary, to determine just when the defendant switched from his status of real estate broker to that of purchaser. There is no question but what on both occasions, he was consulted by the complainant in his capacity as a broker and that in that capacity he undertook to advise her about the loan and later about the sale of the property. There was thus established a confidential relationship which amounted to a trust, and such a relationship once assumed continues until discharged either by operation of law, by an order of a tribunal having the requisite jurisdiction, or pursuant to a valid agreement of the parties in interest who are fully competent to contract and fully conversant with all the facts and with their respective rights and duties." (citing) Wilson v. Hayes, 29 Tenn.App. 49, 193 S.W.2d 107.

(Bell v. Gailey, supra, 37 Tenn. p. 23, 260 S.W.2d p. 303.)

■ As the learned Chancellor stated, in his memorandum opinion, the arrangement was not an assistance

to Cartwright in the financing of this sale, but was in fact a joint venture whereby Cartwright held legal title to the land for the benefit of all members of the joint venture.

After an examination of the entire record and careful consideration of all of the evidence before us, we are convinced that the evidence does not preponderate against the foregoing conclusion of the Chancellor.

The next assignments to be considered together are numbered 7, 8, 9 and 10. All of these assignments deal with credits which the Chancellor deducted from the $20,000.00 gross profit realized from the sale to Baltz Brothers.

The principal contention in assignments 7 and 8 is that the Chancellor should have allowed the defendant a credit of $6,013.00 for the expenses incurred on the property with the operation of a bulldozer, this amount being claimed by the defendant as the cost of such operation.

The evidence conclusively shows that Hooper and Cartwright owned the bulldozer which was used in doing some work on the property and that Mr. Griggs kept an account of this expense. However, Griggs did not testify and, therefore, no satisfactory evidence of such expense was submitted and it was not error for the Chancellor to refuse to allow credit therefor.

In assignment 9, which we will consider separately, the defendant insists the Chancellor erred in finding that under the financial arrangement which was made to secure the down payment of $10,000.00 to be made to Mrs. Smith, Hooper was to have the exclusive listing of the property for resale when Cartwright resold it.

All of the facts and circumstances in the record point to and justify the Chancellor's conclusion that Hooper had such exclusive listing, but if this is an erroneous conclusion, it was a harmless error and does not affect the result of the litigation.

Assignment 10, which will be considered separately, is addressed to the action of the Chancellor in excluding evidence as to part of the proceeds of sale of Cartwright to Baltz Brothers being paid Hooper's counsel, Mr. Pedigo, and in refusing to allow credit for this amount.

The record does not show that the Chancellor completely excluded evidence that $1,338.28 was paid to Mr. Pedigo, but on the other hand, a cancelled check for that amount, payable to Mr. Pedigo, is filed as an exhibit. However, we think the Chancellor correctly refused to allow Hooper credit for this amount, because no evidence was offered to show what service was rendered by Mr. Pedigo or other items of value were contributed by him to justify this payment.

Assignment 11, which will be considered separately, is addressed to the action of the Chancellor in finding certain facts, but the only finding of fact mentioned in this assignment is the fact that Mr. Hooper was the owner of Hermitage Enterprises, which the undisputed testimoney shows was a corporation owned by Hooper, his wife and Griggs.

The remaining portion of this assignment is directed at the Chancellor's reference to certain testimony of Mr. Smith and therefore, we do not think the Chancellor committed the error alleged in this assignment. If he did commit such error, it was harmless and does not affect the result of the litigation.

Assignments 12, 13 and 14, which we will consider together, are addressed to the rulings of the Chancellor in connection with Mr. Woolard's testimony and the Chancellor's findings in connection with this testimony and in connection with Mr. Woolard's professional relationship to Mrs. Smith.

Objection to Mr. Woolard's testimony was sustained upon the grounds that if he undertook to inform Mrs. Smith of Hooper's part in the transaction, he was for that purpose, acting as Hooper's agent and his testimony about the conversation with the testatrix, Mrs. Smith, was incompetent under T.C.A. Section 24-105.

This proffered evidence was placed in the record and we have read it and find that it consists of Mr. Woolard's testimony which is substantially summarized in his answer to one of the questions as follows:

"I had already told Mrs. Smith that I had the arrangements made or worked out, where Hooper and one of his salesmen and I would help Cartwright get the down payment. Mr. Smith ask me * * * He said, 'Well, I hope you are protecting yourself.' I said, 'Well, I have done all that I could to protect myself and the others.' I said, 'We are taking a second mortgage on the property as security.' And, I said, 'Since I've got Mr. Hooper into it and since he has connections I think he can sell it, and I don't think we will lose any money.' And, I said, 'I'd like to think we would make something off of it.' "

(B. of E. p. 101)

 We have considered this testimony, together with all of the other evidence in the case showing the relationships between the parties, and think the Chancellor reached the correct conclusion. However, if this conclu-

sion was not correct, the evidence would not affect the result of the litigation, because it does not show that Mr. Woolard disclosed anything about the transaction to Mrs. Smith except that he, together with Hooper and Griggs, was helping Cartwright finance the down payment, for which they expected to receive some undisclosed amount. This does not necessarily represent a full disclosure to Mrs. Smith of the actual facts of the matter.

Assignments 13 and 14, which we will consider together, are directed at the action of the Chancellor in finding that Mr. Woolard was not Mrs. Smith's attorney in the sale from her to Cartwright and prior to the closing of such sale Mr. Woolard did not advise Mrs. Smith or her son what interest Hooper and Griggs had in the matter.

The evidence does not preponderate in favor of the defendant's contention that an attorney-client relationship existed between Mr. Woolard and the Smiths. Of course, he prepared the deed to Cartwright, but it appears from the evidence that about all the Smiths had to do with the arrangement for this service to be performed by Mr. Woolard, was to consent to it.

Mr. Woolard acquired a beneficial interest in the property when it was conveyed to Cartwright and, therefore, he was hardly in a position to give the Smiths the independent advice which an attorney would normally be expected to give his clients.

Assignment number 15, which we will consider separately, is addressed to the action of the Chancellor in refusing to permit the defendant to introduce evidence of the increase in value of real estate in the area in which

the subject property is located during the period of time between the sale from Smith to Cartwright and the sale from Cartwright to Baltz Brothers.

 This assignment is fully answered in the Chancellor's opinion by citation of McNeill v. Dobson-Bainbridge Realty Co., 184 Tenn. 99, 195 S.W.2d 626, wherein the Supreme Court said the fact that the owner of the property may have received what seemed to be and what in reality was a fair price for the conveyance to her agent is of no consequence in the application of the rule which constructs the trust.

## COMPLAINANT'S ASSIGNMENTS

Having considered and discussed all of the defendant's assignments of error, we will now consider the assignments filed by the complainant, which are as follows:

### I

"The court erred in allowing the Defendant a credit of $4,015.64 paid to W. S. Cartwright and Elmer Woolard for their interest in the land. This was error because the loss resulting to complainant because of these payments was occasioned solely by the Defendant's breach of his fiduciary relationship.

### II

The Court erred in allowing Appellant a credit of $1,500.00 as commission on the sale of the property to W. S. Cartwright.

This was error because the sale was an unauthorized sale of an agent to himself. He would be entitled only to a five per cent (5%) commission on the $55,000.00 sale, which is the only bona fide sale made."

■ We find no merit in complainant's assignment number one, because Cartwright and Woolard occupied no fiduciary relationship to the Smiths and by pledging their credit to finance the joint venture, they made a substantial contribution toward realization of the profit which resulted from the sale to Baltz Brothers.

As the Chancellor observed in his memorandum opinion, "Cartwright and Woolard had a right to form a joint venture in the holding of the property, but Hooper and Griggs did not have such a right without making a full disclosure to Mrs. Smith of their interest in the property * * *."

■ To require Hooper to pay the complainant that portion of the profit which he had already paid to Cartwright and Woolard would impose an unjust penalty upon Hooper and such should not be the result of an equitable suit such as this is, to recover the profit from an equitable trust.

We must also overrule complainant's assignment of error number two. In view of the fact that the Chancellor reduced Hooper's commission on the sale from Cartwright to Baltz Brothers from the agreed amount of ten per cent to five per cent, we do not think it was error to allow him a commission of $1,500.00 (which is less than five per cent) on the sale from Smith to Cartwright.

After all, the total amount of commissions allowed to Hooper as a credit against the $20,000.00 profit is $4,250.00, which is not an unreasonable allowance.

On the whole, we are satisfied from the evidence before us that the Chancellor reached a fair and equitable result and we concur therein.

No reversible error appears in the record and all of the assignments of error are overruled and the decree of the trial Court is affirmed. The appellant-defendant, Hooper, will pay all the costs of this appeal.

Shriver, P. J. (M.S.), and Todd, J., concur.