**J. Waymon ELLISON,**
**Plaintiff–Appellee,**

v.

**David L. ALLEY, Sr., et. al.,**
**Defendants–Appellants.**

Supreme Court of Tennessee,
at Knoxville.

Nov. 16, 1992.

D. Scott Hurley, Knoxville, for defendants-appellants.

John W. Cleveland, Arlene A. Cleveland, Sweetwater, for plaintiff-appellee.

OPINION

O'BRIEN, Justice.

We granted appellant permission to appeal in this cause to address the singular issue of whether a real estate broker, found in breach of his fiduciary duty in the transaction of the sale of the client's property, is entitled to commission on the sale of such property.

We begin our review mindful that this Court is bound by concurrent findings of fact by the chancellor and the Court of Appeals if such findings are supported by material evidence. T.C.A. 27–1–113. To that end, and because we grant appeal only to review the narrow issue noted, the facts of this case as found by the chancellor and adopted by the Court of Appeals are, in pertinent part, as follows.

This is a suit in which J. Waymon Ellison [who at the time of trial was 84 years old] alleges that the defendants, both of whom are Knox County real estate brokers, breached certain legal, ethical, and contractual obligations which they owed to him growing out of the sale of his farm in Loudon County, Tennessee. As a consequence, plaintiff avers that the defendants received an undisclosed profit of $180,000 on the sale of his 241 acre farm, for which the plaintiff received $200,000. The plaintiff demands judgment against the defendants for the $180,000 less a reasonable brokerage commission.

The relationship between the plaintiff and the defendant, David Alley, Sr. began in 1984 when the plaintiff listed his farm for sale with the defendant. Within a short time the listing contract expired by its terms and plaintiff wrote to the defendant [notifying him of his dismissal as listing agent].

Thereafter, the defendant would visit the plaintiff from time to time while in Loudon County to ask the plaintiff if he would again agree to list his farm for sale. The defendant testified that he "pestered" the plaintiff to list his farm. The plaintiff steadfastly refused to list his property again until 1987 when the parties, following negotiations of several months duration, entered into an "Option to Purchase" dated October 19, 1987. In drafting the option, David L. Alley, Sr., worded it so as to give his son, David L. Alley, Jr., the option to purchase plaintiff's farm for $200,000. The consideration paid to the plaintiff for the option was $500 with an expiration date of April 1, 1988.

It appears that the defendants had separate businesses, but occasionally combined forces and worked together on some transactions. This is one such instance. Although the option was to David L. Alley, Jr., most of the activities were handled and directed by his father, so that each was serving for the benefit of the other.

In June 1987, the defendant, David Alley, Sr., had been retained by a Florida corporation to purchase undeveloped commercial property along Campbell Station Road near Interstate 40 in West Knox County. This property was located in such a way that it became necessary for the corporation to purchase an adjoining tract of land belonging to Cora Myers and her children, all of whom are adults. Because of the location of her property and the corporation's great need to acquire it, Cora Myers, who was 73 years of age at the time of trial, was able to sell her small, 26-acre tract of land for $585,000, an amount far in excess of the price which it would have commanded under normal circumstances. From the proceeds of the sale of her land, Cora Myers purchased the Ellison farm in Loudon County and other parcels.

The defendants were responsible for bringing the plaintiff and the Myers family together. As the deal between Cora Myers and the Florida corporation progressed, she was advised by one or both of the defendants of the need to reinvest her profits in other real estate in order to avoid paying a large portion of her profits to the government in income taxes.

One of the parcels which the defendants showed to Cora Myers, and the one they emphasized, was the tract belonging to the plaintiff and for which the defendants held the option to purchase. However, the defendants priced the Ellison farm to Cora Myers for $380,000.

In a letter to the "Myers family" dated October 27, 1987, David L. Alley, Sr., stressed the tax aspect of the transaction and the availability of the Ellison property, the relevant portion of which reads as follows:

"... It is imperative that this transaction be handled in the proper manner, or you could end up paying IRS 30% of $590,000. We do not have much time as January is not far off.

I will set up a meeting with my CPA, Mr. Tom Perry, of Perry, Hamilton and Company and a Title Attorney, Mr. Joe Huie, of TN. Valley Title Company. They will insure that this transaction is

handled properly with no problems involving the IRS.

. . . .

In conclusion, I think it is great that you can sell your small farm which is strategically located, and come up with two fine farms, plus all the additional money. Even the fact that these replacement farms become available is unusual. After all, Mr. Ellison would have never agreed to sell while his wife remained alive, and the farm on Drinnen Road only became available to settle an estate."

When it became apparent to the defendants that both transactions could be carried out, the defendant, David L. Alley, Sr., notified the "Myers family" that Ellison had approved the contract on his farm and that the corporation intended to purchase the Myers' property. He then gave notice to the plaintiff on December 2, 1987 that the defendants intended to exercise their option to purchase. But the defendant made it appear to the plaintiff that the exercise of the option to purchase was simply a step to be taken in the sale of the plaintiff's farm to Cora Myers and her children.

In fact the defendants never exercised their option. The closing of both transactions was scheduled for January 15, 1988 and the plaintiff was notified by Alley, Sr. that, "the title company will prepare your deed so there will be nothing for you to do but show up, sign the deed, and collect your money." When the plaintiff came to the closing, he signed a warranty deed conveying his farm to Cora Myers and her children and collected 199,868,53.

To avoid having to exercise the option, which would have resulted in additional expense to the defendants and could have disclosed their $180,000 profit, the defendants scheduled the closing on the Myers' property on the same date but at an earlier time, and simply executed an assignment of their option on the Ellison property to Cora Myers and her children. Cora Myers paid to David L. Alley, Sr., 381,137.50 thinking that was the purchase price being paid to the plaintiff in exchange for the Warranty Deed she received from him later in the day. The "Assignment of Option" was sent home with Cora Myers in a stack of papers but was not shown to her or her children at the time of closing, nor was it ever explained to them or the plaintiff that they had essentially paid the plaintiff $200,000 for his farm and $180,000 to the defendants for the assignment of their option on the Ellison property.

The Court is convinced that the transaction was structured and the closing orchestrated by the defendants in such a way as to make it unlikely that either the plaintiff or Cora Myers would know the true details of the transaction and specifically to conceal their $180,000 profit.

The trial court treated the defendant's "option" to purchase the plaintiff's farm as a listing contract because that is how the Alley's themselves used it; as a means of securing the right to sell the plaintiff's farm to the Myers. The defendants, when publishing notice of the transaction after the fact, showed the sale as a listing in order to demonstrate the size of their sales volume. The chancellor found in favor of the plaintiff, but awarded only nominal damages of $250.00. The nominal award was based upon the trial court's opinion that the plaintiff had received the fair market value for his property and that it had actually been the Myers family that had been damaged by paying $380,000 for a farm valued at $200,000.

The Court of Appeals affirmed the chancellor's finding of breach of fiduciary duty and concurred with the chancellor's treatment of the "options" contract, based on the maxim "equity looks to the intent rather than to the form." Inman, *Gibson's Suits in Chancery*, Sec. 19 (7th ed.). However, the Court of Appeals modified the trial court's award of damages by determining the plaintiff was entitled to the defendant's profit less a reasonable real estate commission.

■ We are in agreement with the finding of breach of fiduciary duty and the award to the plaintiff of the defendant's

profits. But, on the narrow issue upon which this appeal was granted, we find that the defendants are not entitled to a commission on the sale of the Ellison property. It is apparent that the defendants manipulated both the Myers and Ellison transactions in such a manner as to willfully, and wrongfully, conceal their true role and their intention to reap a $180,000 ill-gained profit from the sale of the property.

■ It is well settled that the real estate agent acts as a fiduciary to the client. In any transaction or dealing related to such relationship, "the agent can in no way and under no circumstances act for himself or for any other than the principal without first making full and complete disclosure of the facts to the principal. He cannot profit by his failure to make such disclosure." *Heard v. Miles*, 32 Tenn.App. 410, 222 S.W.2d 848 (1949), *cert. den'd*, 18 June 1949. When a broker procures legal title to property, in violation of a fiduciary duty owed to the owner, equity constructs a trust out of the transaction. In such a case, the property owner is entitled to the profits wrongfully received by the broker in the transaction. *Smith v. Hooper*, 59 Tenn.App. 167, 438 S.W.2d 765 (1968), *cert. den'd* 1/20/69. The construction of such a trust is without regard to whether the principal received a fair price for the conveyance of the property. *McNeill v. Dobson–Bainbridge Realty Co.*, 184 Tenn. 99, 195 S.W.2d 626 (Tenn.1946).

■ Likewise, "[w]here a broker's actions in a sale transaction amounts to bad faith or misconduct, the broker is not entitled to a commission on the sale." *Hughey v. Rainwater Partners*, 661 S.W.2d 690 (Tenn.App.1983), *Perm. to App.* den'd 12/19/83; 1983; *citing, Christians v. Town of East Ridge*, 12 Tenn.App. 101 (1928), *cert. den'd* 1928; *Powell v. Gilbert*, 10 Tenn.App. 530 (1927), *cert. den'd* 1928. It is undeniable that the defendants acted in these transactions with bad faith and beyond the bounds of ethical conduct. To permit the defendants credit for a reasonable commission on the sale of the Ellison property would be no more than offering an undeserved reward for avarice.

This cause is remanded for further proceedings consistent with this holding. Costs are assessed against the appellants.

REID, C.J., and DROWOTA, DAUGHTREY and ANDERSON, JJ., concur.