IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
March 20, 2014 Session

## DONNA BOBO v. STATE OF TENNESSEE REAL ESTATE COMMISSION

**Appeal from the Chancery Court for Davidson County**
**No. 12595II    Carol L. McCoy, Chancellor**

No. M2013-02037-COA-R3-CV - **Filed May 5, 2014**

This is an appeal from an administrative decision permanently revoking a real estate broker's license. The Chancery Court reversed the decision of the administrative panel, finding that the decision was not based on substantial and material evidence, that the procedure utilized violated both statutory and constitutional principles, and that the administrative panel demonstrated "evident partiality." We reverse the decision of the Chancery Court and reinstate the decision of the administrative panel. Reversed and remanded.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Reversed and Remanded**

J. STEVEN STAFFORD, J., delivered the opinion of the Court, in which DAVID R. FARMER, J., and HOLLY M. KIRBY, J., joined.

Robert E. Cooper, Jr., Attorney General and Reporter; Joseph F. Whalen, Acting Solicitor General; Nicholas G. Barca, Assistant Attorney General, for the appellant, State of Tennessee Real Estate Commission.

Kim G. Sims, Memphis, Tennessee, for the appellee, Donna Bobo.

## OPINION

### Background

In 2007, as a licensed real estate broker, Petitioner/Appellee Donna Bobo represented

Shalah Smith in Ms. Smith's $60,000.00 purchase of a string of rental properties located on Dungreen Avenue in Memphis, Tennessee ("the property" or "the subject property"). Ms. Smith hired Ms. Bobo and her property-management company, East Coast Properties, LLC, to manage the property.[1] Ms. Smith subsequently ran into financial difficulties and was facing foreclosure on the property. In May of 2008, Ms. Smith contacted Ms. Bobo, seeking her advice concerning options for the property. Ms. Bobo advised Ms. Smith either that the property could be foreclosed, that Ms. Smith could enter into a short sale, or that Ms. Smith could quitclaim the property to Global Investment Services, LLP ("Global"), a limited liability partnership consisting of Ms. Bobo and Rick Horton formed for the purpose of holding property. Ms. Bobo and Ms. Smith drafted two Letters of Agreement and an Addendum (together "the contract"), which were based on a form contract supplied by Ms. Bobo. On May 29, 2008, Ms. Smith signed the contract on her own behalf, and Ms. Bobo signed on behalf of Global. As part of the contract, Ms. Smith quitclaimed the property to Global for $10.00. Global agreed to collect rent from the tenants, maintain the rental property, and pay the mortgages on the property each month on behalf of Ms. Smith. The mortgages remained in Ms. Smith's name. The contract provided that if Global "for any reason refuses to make the agreed scheduled monthly payments" on the mortgages, it "will sell, release, remise, quit claim, and convey" the property back to Ms. Smith "within 30-60 days." The contract further stated that the parties were "fully aware that [Global] is acting as the principal owner in this transaction and plans to make, if possible, an unconscionable profit with this property."

Global failed to timely make the mortgage payments on the property. On at least one occasion, in April of 2011, Mr. Horton misappropriated rents for his own purposes, rather than paying the mortgage. Accordingly, Ms. Smith received a notice that the property was in default and that formal foreclosure proceedings would commence May 3, 2011. Ms. Smith apparently believed that this non-payment was a triggering event under the contract upon which Ms. Smith could demand return of the property. Accordingly, Ms. Smith demanded that Global return the property to her within thirty to sixty days, but Global dissolved and Ms. Bobo allegedly refused to return the property.

Dissatisfied with Ms. Bobo's response, Ms. Smith filed an unverified complaint with the Respondent/Appellant State of Tennessee Real Estate Commission ("Real Estate Commission") on approximately August 31, 2007.[2] Ms. Bobo responded to the allegations

---

[1] Ms. Smith is herself a licenced real estate agent, but lives and works out-of-state.

[2] The original complaint filed by Ms. Smith was not entered as an exhibit in the contested hearing and is not contained in the record on appeal.

in the complaint with a sworn Answer dated June 11, 2011.[3] Based on the allegations in the complaint, on December 21, 2011, the Real Estate Commission issued a Notice of Hearing and Charges against Ms. Bobo. A contested case hearing was scheduled for January 12, 2012. Ms. Smith was to testify by telephone. Ms. Bobo filed a motion for a continuance, which was granted. Ms. Bobo then filed a Motion to Dismiss, which was denied after the Administrative Law Judge ("ALJ") determined that material issues of fact should be decided by the Real Estate Commission. The Real Estate Commission issued an Amended Notice of Charges and Hearing on January 31, 2012. Ms. Bobo filed another Motion to Dismiss on February 7, 2012, notifying the Real Estate Commission that Ms. Smith "did not wish to go forward with this matter [because] the parties have reached an agreement." Ms. Bobo attached to the motion a letter from Ms. Smith indicating that she would not be available to testify at the contested hearing and that her issues with Ms. Bobo had been resolved. The hearing occurred one day later, on February 7, 2012, but Ms. Smith did not testify. Instead, Eve Maxwell, Executive Director of the Real Estate Commission, testified as to the licensure history of Ms. Bobo, as well as her receipt of Ms. Smith's complaint and subsequent investigation. E-mails between Ms. Smith and Ms. Bobo, as well as Ms. Bobo's Answer to the unverified complaint were entered as substantive evidence in the hearing. Ms. Maxwell testified that during the events in question, Ms. Bobo was duly licensed as a real estate broker in the State of Tennessee.

Ms. Bobo was also called to testify by the Real Estate Commission. Ms. Bobo denied that she was acting as a real estate licensee at any time during the events at issue in the Notice of Charges. However, Ms. Bobo admitted that she had entered into an agreement to purchase, for little-to-no consideration, the subject property from Ms. Smith at a time when she was representing Ms. Smith as a property manager. Further, Ms. Bobo admitted that, at all times relevant to the allegations in the Notice of Charges, she maintained a Tennessee real estate broker's license. Ms. Bobo testified that she presented Ms. Smith with several options, including attempting to sell the property, foreclosure, and quitclaiming the property to Global. According to Ms. Bobo, Ms. Smith determined that it was in her best interest to quitclaim the property to Ms. Bobo and her business partner. Accordingly, Ms. Smith would avoid a foreclosure on her credit record and the current tenants could remain in their homes. According to Ms. Bobo, Ms. Smith declined to attempt to sell the property because the value of the property was less than the indebtedness at that time.

Ms. Bobo also admitted that Global had failed to pay the mortgage on the property, but denied that its failure to do so was willful or attributable to her. Instead, Ms. Bobo testified that her business partner had misappropriated Global's funds without her

---

[3]Ms. Bobo did not appear to be represented by counsel with regard to the drafting of her Answer to Ms. Smith's complaint.

knowledge, causing Global to fall behind on the mortgage and the property to go in to default. Ms. Bobo testified, however, that Global later made the scheduled payments and had made all payments since then. Further, the mortgage holder had not initiated proceedings to foreclose on the property. At the time of the hearing, the property was still ostensibly owned by Global, despite the fact that the entity had been administratively dissolved by the State of Tennessee.

Ms. Bobo admitted, however, that despite the demand for the return of the property pursuant to the contract, Global had not quitclaimed the property back to Ms. Smith. Instead, Bobo testified that Ms. Smith desired to include additional terms and conditions on the return. In addition, Ms. Bobo admitted in her Answer that Mr. Horton refused to return the property to Ms. Smith for "free." Accordingly, Ms. Bobo and Global refused to return the property within thirty to sixty days of Ms. Smith's demand. Regardless, Ms. Bobo also testified that she and Ms. Smith had reached an agreement regarding the property and that she understood that Ms. Smith no longer wanted to prosecute her complaint with the Real Estate Commission. Although Global had been administratively dissolved, Ms. Bobo admitted that, at the time of the hearing, either she or Global still retained ownership of the subject property, as the property had still not been returned to Ms. Smith.

As a result of the hearing, the Commission found that Ms. Bobo had violated several provisions of the Tennessee Real Estate Broker License Act ("Real Estate Broker Act"). The Commission assessed against Ms. Bobo $2,160.00 in hearing costs, a $5,000.00 civil penalty, and permanently revoked her broker's license.

Ms. Bobo petitioned the Chancery Court for judicial review. By Memorandum and Order dated August 2, 2013, the Chancery Court ruled in favor of Ms. Bobo, concluding that the Commission had not proceeded in compliance with the provisions of the Real Estate Broker Act and the Uniform Administrative Procedures Act ("UAPA"), that the Commission's decision was not supported by substantial and material evidence, that the hearing violated Ms. Bobo's due-process rights, and that the Commission had not acted impartially. Specifically, the trial court ruled that the complaint against Ms. Bobo was not verified, as required by Tennessee Code Annotated Section 62-13-312, discussed *infra*. Further, the trial court noted that Ms. Bobo was found guilty of violating a different statutory provision than the one she was initially charged with violating. Third, the trial court ruled that the Commission improperly relied on hearsay testimony from Ms. Smith, which the court did not consider "substantial and material evidence." The trial court also ruled that given the severity of the depravation, i.e., permanently losing her real estate license, due process required Ms. Bobo be given the opportunity to cross-examine Ms. Smith in court. The trial court further ruled that the Commission improperly considered an offer of settlement made by the Real Estate Commission prior to the hearing. The court finally ruled that this

consideration called into question the Real Estate Commission's impartiality. The Real Estate Commission appeals.

## II. Issues Presented

The Real Estate Commission raises the following issues, which are taken from its brief:

1. Did the chancery court err in ruling that a verified complaint is required before the Real Estate Commission can convene a contested case, when, pursuant to Tenn. Code Ann. § 62-13-312(a), the [Real Estate] Commission may hold a contested case hearing upon its own motion?

2. Did the chancery court err in ruling that the Commission's notice of hearing and charges was inadequate, even though it quoted the statutory provisions that Donna Bobo was charged with violating?

3. Did the chancery court err in ruling that the [Real Estate] Commission's decision was not supported by substantial and material evidence, when (A) the [Real Estate] Commission's findings were based on the non-hearsay testimony and documentation of Eve Maxwell and the corroborating testimony and documentation of Ms. Bobo and (B) the findings show that Ms. Bobo made substantial and willful misrepresentations to Shalah Smith, that her conduct constituted improper dealing, and that she was not loyal to the interests of Ms. Smith, all in violation of Tenn. Code Ann. §§ 62-13-312(b) and-404(2) ?

4. Did the chancery court err in ruling that the [Real Estate] Commission's decision violated Ms. Bobo's due-process rights because the complainant did not testify at the hearing, even though Ms. Bobo was present at the hearing, was represented by counsel, had the ability to subpoena witnesses, and herself corroborated the evidence supporting the [Real Estate] Commission's decision?

5. Did the chancery court err in ruling that the [Real Estate] Commission did not act impartiality at the hearing because a member of the Commission mentioned a previous consent order, when the Commission must

perform multiple roles as an administrative agency?

## Standard of Review

This Court, as well as the trial court, reviews the Real Estate Commission's decision under the narrowly defined standard of review contained in the UAPA, Tenn. Code Ann. § 4-5-322(h), rather than under the broad standard of review used in other civil appeals. ***Davis v. Shelby Cnty. Sheriff's Dept.***, 278 S.W.3d 256, 264 (Tenn. 2009). Specifically, that statute provides that:

> The court may affirm the decision of the agency or remand the case for further proceedings. The court may reverse or modify the decision if the rights of the petitioner have been prejudiced because the administrative findings, inferences, conclusions or decisions are:
>
> (1) In violation of constitutional or statutory provisions;
> (2) In excess of the statutory authority of the agency;
> (3) Made upon unlawful procedure;
> (4) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion; or
> (5)(A) Unsupported by evidence that is both substantial and material in the light of the entire record.
> (B) In determining the substantiality of evidence, the court shall take into account whatever in the record fairly detracts from its weight, but the court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact.

Tenn. Code Ann. § 4-5-322(h).

A reviewing court should generally defer to an administrative agency's decision when it is acting within its area of specialized knowledge, experience, and expertise. ***Williamette Indus., Inc. v. Tennessee Assessment Appeals Comm'n***, 11 S.W.3d 142, 146 (Tenn. Ct. App. 1999) (citing ***Wayne Cnty. v. Tennessee Solid Waste Disposal Control Bd***, 756 S.W.2d 274, 279 (Tenn. Ct. App.1988)). This Court reviews the factual findings of the Commission under the limited provisions of Tennessee Code Annotated Section 4-5-322, and we review matters of law *de novo* with no presumption of correctness. ***Davis***, 278 S.W.3d at 264 (citing Tenn. R. App. P. 13(d); ***Cumulus Broad. Inc. v. Shim***, 226 S.W.3d 366, 373 (Tenn. 2007)).

## Analysis

**Initiation of Proceedings**

In its first issue, the Real Estate Commission argues that the Chancery Court erred in ruling that a verified complaint is required before the Real Estate Commission can convene a contested case. This issue concerns the interpretation of a statute. In determining the proper interpretation to be given to a statute, we must employ the rules of statutory construction. The Tennessee Supreme Court recently reiterated the "familiar rules," stating:

> Our role is to determine legislative intent and to effectuate legislative purpose. [*Lee Med., Inc. v. Beecher*, 312 S.W.3d 515, 526 (Tenn. 2010)]; *In re Estate of Tanner*, 295 S.W.3d 610, 613 (Tenn. 2009). The text of the statute is of primary importance, and the words must be given their natural and ordinary meaning in the context in which they appear and in light of the statute's general purpose. *See Lee Med., Inc.*, 312 S.W.3d at 526; *Hayes v. Gibson Cnty.*, 288 S.W.3d 334, 337 (Tenn. 2009); *Waldschmidt v. Reassure Am. Life Ins. Co.*, 271 S.W.3d 173, 176 (Tenn. 2008). When the language of the statute is clear and unambiguous, courts look no farther to ascertain its meaning. *See Lee Med., Inc.*, 312 S.W.3d at 527; *Green v. Green*, 293 S.W.3d 493, 507 (Tenn. 2009). When necessary to resolve a statutory ambiguity or conflict, courts may consider matters beyond the statutory text, including public policy, historical facts relevant to the enactment of the statute, the background and purpose of the statute, and the entire statutory scheme. *Lee Med., Inc.*, 312 S.W.3d at 527–28. However, these non-codified external sources "cannot provide a basis for departing from clear codified statutory provisions." *Id.* at 528.

*Mills v. Fulmarque*, 360 S.W.3d 362, 368 (Tenn. 2012). Accordingly, absent ambiguity, we are to apply the plain language of the statute.

Tennessee Code Annotated Section 62-13-312 authorizes the Real Estate Commission to investigate possible violations of the Real Estate Broker Act and hold disciplinary hearings:

> The commission may, upon its own motion, and shall, upon the verified complaint in writing of any person setting forth a cause of action under this section, ascertain the facts and, if warranted, hold a hearing for reprimand or for the suspension or revocation

of a license.

Tenn. Code Ann. § 62-13-312(a). Accordingly, the above statute provides two methods for instituting an investigation and convening a contested case. First, the Real Estate Commission "shall" investigate the facts upon the submission of a verified complaint. Tenn. Code Ann. § 62-13-312(a). The use of the word "shall" in a statute is generally construed as being mandatory rather than discretionary. *JJ & TK Corp. v. Bd. of Comm'rs*, 149 S.W.3d 628, 631 (Tenn. Ct. App. 2004). Accordingly, if a verified complaint is submitted, the Real Estate Commission is under a statutory duty to investigate the claims made therein, and to hold a contested hearing, if warranted. However, that is not the only procedure available to initiate investigation by the Real Estate Commission. Second, the Real Estate Commission "may" investigate facts and hold a contested hearing "upon its own motion." Tenn. Code Ann. § 62-13-312(a). It is well-settled that the use of the word "may" in a statute generally connotes "discretion or permission and will not be treated as a word of command." *Steppach v. Thomas*, 346 S.W.3d 488 (Tenn. Ct. App. 2011) (citing *Williams v. McMinn County*, 209 Tenn. 236, 352 S.W.2d 430, 433 (Tenn. 1961)); *see also Bd. of County Commr's of Shelby County v. Taylor*, No. 93-1490-I, 1994 WL 420922, at *4 (Tenn. Ct. App. Aug. 12, 1994) (holding that "a provision couched in permissive terms is generally regarded as directory or discretionary" and "[t]his is true of the word 'may'"). Accordingly, the Real Estate Commission has discretion to instigate an investigation and convene a contested hearing, if it determines, in its discretion, that such action is warranted. Thus, a verified complaint is not a condition precedent to an investigation and contested hearing by the Real Estate Commission. Instead, the Real Estate Commission may investigate and convene a hearing in its own discretion.

Here, Ms. Smith filed an unverified complaint with the Real Estate Commission. Because the complaint was unverified, the Real Estate Commission was not required to investigate the facts alleged in the complaint. However, nothing in Tennessee Code Annotated Section 62-13-312(a) prevents the Real Estate Commission from exercising its discretion to investigate the facts and convene a contested hearing. Accordingly, the Real Estate Commission did not exceed its authority in doing so in this case.

### Notice of Charges

The Real Estate Commission next argues that the trial court erred in holding that Ms. Bobo did not have adequate notice of the charges against her because the Notice of Charges contained the incorrect statute. Again, we agree with the Real Estate Commission.

"In context of administrative hearing process, basic due process requires notice reasonably calculated under all circumstances to apprise interested parties of claims of

opposing parties." ***McClellan v. Board of Regents of State University***, 921 S.W.2d 684, 688 (Tenn.1996) (citing ***Mullane v. Central Hanover Bank & Trust Co.***, 339 U.S. 306, 314, 70 S.Ct. 652, 657, 94 L.Ed. 865 (1950)). "The purpose of due process requirements is to notify the individual in advance in order to allow adequate preparation and reduce surprise." ***McClellan***, 921 S.W.2d 688 (citing ***Memphis Light, Gas & Water Division v. Craft***, 436 U.S. 1, 14, 98 S.Ct. 1554, 1562–63, 56 L.Ed.2d 30 (1978). The UAPA provides specific requirements with regard to a contested hearing. Tennessee Code Annotated Section 4-5-307 states:

> (a) In a contested case, all parties shall be afforded an opportunity for hearing after reasonable notice.
>
> (b) In all proceedings the notice shall include:
>
> (1) A statement of the time, place, nature of the hearing, and the right to be represented by counsel;
>
> (2) A statement of the legal authority and jurisdiction under which the hearing is to be held, **including a reference to the particular sections of the statutes and rules involved**; and
>
> (3) A short and plain statement of the matters asserted. If the agency or other party is unable to state the matters in detail at the time the notice is served, the initial notice may be limited to a statement of the issues involved. Thereafter, upon timely, written application a more definite and detailed statement shall be furnished ten (10) days prior to the time set for the hearing.

(Emphasis added).

Here, the Chancery Court ruled that the Notice of Charges at issue did not contain "a reference to the particular sections of the statutes and rules involved." *See* Tenn. Code Ann. § 4-5-307(b)(2). Specifically, the Notice of Charges contained in the record states that:

> 1.    It is alleged that [Ms. Bobo's] acts and conduct, as set out in the foregoing "Allegations of Fact", constitute violation(s) of Tenn. Code Ann. § 62-13-**104(b)(7)(B)**, the relevant portion of which reads as follows:
>
> (b) The commission shall have the power to

refuse a license for cause or to suspend or revoke a license where it has been obtained by false representation, or by fraudulent act or conduct, or where a license[e], in performing or attempting to perform any of the acts mentioned herein is found guilty of:

(1)    Making any substantial and willful misrepresentation.

(2)    Making any promise of a character likely to influence, persuade or induce any person to enter into any contract or agreement when the licensee could not or did not intend to keep such a promise;

[\*   \*   \*]

(14)    Violating any provision of the Act or any rules promulgated thereunder.

[\*   \*   \*]

(20)    Any conduct, whether the same or a different character from that hereinbefore specified, which constitutes improper, fraudulent or dishonest dealings.

(Emphasis added). The notice mistakenly cited Tennessee Code Annotated Section 62-13-**104(b)(7)(B)** when it should have cited Tennessee Code Annotated Section 62-13-**312(b).** However, the text of the proper statute was contained in the Notice of Charges; only the citation was incorrect. While the Real Estate Commission later amended the Notice of Charges, the citation was not corrected. Only during the deliberations of the Real Estate Commission did counsel note that the Notice of Charges contained a "typo" regarding the correct statutory citation.

Ms. Bobo argues that because the Notice of Charges did not contain the correct citation to the governing statute that it did not include "a reference to the particular sections of the statutes and rules involved." Tenn. Code Ann. § 4-5-307(b)(2). Without strictly complying with the notice statute, Ms. Bobo argues that she was not afforded appropriate notice of the charges against her.

We respectfully disagree. The parties cite no cases in which this Court has considered a typographical error in connection with a notice of charges. From our research, however, we have found several cases from other jurisdictions in which courts have held that similar typographical errors were harmless. *See, e.g,* ***Oliver v. Babcock***, No. 2:12-CV-2831 KJN P, 2014 WL 29666, at *4 (E.D. Cal. Jan. 3, 2014) (holding that a typographical error concerning the date of an incident in a notice was harmless); ***In re Freedom Communications Holdings, Inc.***, 472 B.R. 257, 259 (Bankr. D. Del. 2012) (holding that typographical error in a bankruptcy notice did not invalidate the notice, as "the notice was reasonably calculated to apprise [a creditor] of both [the debtor's] bankruptcy and the claims bar date"); ***Flahiff v. Cooper***, No. CIVA 09-CV-02593-BNB, 2010 WL 1372405, at *4 (D.Colo. April 5, 2010) (holding that the misspelling of the respondent's name in a notice of charges did not violate the respondent's due process rights).

Further, we note that Ms. Bobo has not alleged that she did not receive actual notice of the charges against her or that the Notice of Charges was inadequate in any way other than the typographical error regarding the statutory citation. Here, the governing statute was set forth verbatim in the Notice of Charges. In addition, from our review of the relevant statutes, Tennessee Code Annotated Section 62-13-104(b)(7)(B) and Tennessee Code Annotated Section 62-13-312(b) contain largely identical provisions regarding what acts constitute violations of the Real Estate Broker Act.[4] Thus, the Notice of Charges contained "a reference

---

[4] Tennessee Code Annotated Section 62-13-104(b)(7)(B) provides, in pertinent part:

> The commission has the power to refuse a license for cause or to suspend or revoke a license where it has been obtained by false representation or by fraudulent act or conduct, or where a licensee, in performing or attempting to perform any of the acts mentioned in this section, is found guilty of:
>
> (i) Making any substantial and willful misrepresentation;
>
> (ii) Making any promise of a character likely to influence, persuade or induce any person to enter into any contract or agreement when the licensee could not or did not intend to keep the promise;
>
> \* \* \*
>
> (xiii) Any conduct, whether of the same or of a different character from that specified in this subdivision (b)(7)(B), that constitutes improper, fraudulent or dishonest dealing.

This statute applies to licensed agents performing vacation lodging services, rather than real estate brokers, such as Ms. Bobo. Tennessee Code Annotated Section 62-13-312(b), the applicable statute for real estate

(continue.....)

to the particular sections of the statutes and rules involved" because the particular sections of the statutes were fully laid out, save the citation, in the Notice of Charges. Tenn. Code Ann. § 4-5-307(b)(2). Nothing in the record suggests that Ms. Bobo ever objected to the Notice of Charges or sought a "more definite and detailed statement" pursuant to Tennessee Code Annotated Section 62-13-312(b)(3).

Finally, we note that both this Court and the Chancery Court are constrained by the following language of the UAPA: "No agency decision pursuant to a hearing in a contested case shall be reversed, remanded or modified by the reviewing court unless for errors that affect the merits of such decision." Tenn. Code Ann. § 4-5-307(i). This Court in *Daley v. University of Tennessee at Memphis*, 880 S.W.2d 693, 93 Ed. Law Rep. 1056 (Tenn. Ct. App. March 18, 1994), cited the above provision to hold that when a deviation from the strict requirements regarding a notice of charges is "only a technicality," which does not affect the merits of the underlying decision, the deviation is not reversible error. *Id.* at 695–96.

_____

(....continue)
brokers and agents, provides, in relevant part:

> The commission shall have the power to refuse a license for cause or to suspend or revoke a license where it has been obtained by false representation or by fraudulent act or conduct, or where a licensee, in performing or attempting to perform any of the acts mentioned herein, is found guilty of:
>
> (1) Making any substantial and willful misrepresentation;
>
> (2) Making any promise of a character likely to influence, persuade or induce any person to enter into any contract or agreement when the licensee could not or did not intend to keep the promise;
>
>          *    *    *
>
> (14) Violating any provision of this chapter, any rule duly promulgated and adopted under this chapter or the terms of any lawful order entered by the commission;
>
>          *    *    *
>
> (20) Any conduct, whether of the same or a different character from that specified in this subsection (b), that constitutes improper, fraudulent or dishonest dealing; . . . .

Accordingly, with regard to the substantive portions of the two statutes, only Tennessee Code Annotated Section 62-13-312(b)(14) is different.

Likewise in this case, the typographical error concerning the statutory citation is "only a technicality," and there is no suggestion that this slight deviation from Tennessee Code Annotated Section 4-5-307(b)(2) affected the merits of the Real Estate Commission's decision.

**Hearsay**

The Real Estate Commission's next two issues concern the trial court's determination that the Real Estate Commission's reliance on the hearsay statements of Ms. Smith meant both that the Real Estate Commission's decision was not supported by substantial and material evidence, and that Ms. Bobo's alleged inability to confront Ms. Smith violated her due process rights. We begin first with the Chancery Court's determination that the Real Estate Commission's decision was not based on substantial and material evidence.

As previously discussed, the UAPA provides that an agency decision may be reversed or modified if the decision is "[u]nsupported by evidence that is both substantial and material in the light of the entire record." Tenn. Code Ann. § 4-5-322(h)(5)(A). Substantial and material evidence is "'such relevant evidence as a reasonable mind might accept to support a rational conclusion and such as to furnish a reasonably sound basis for the action under consideration.'" *Macon v. Shelby Cnty. Gov't Civil Serv. Merit Bd.*, 309 S.W.3d 504, 508 (Tenn. Ct. App. 2009) (quoting *Pruitt v. City of Memphis*, No. W2004-01771-COA-R3-CV, 2005 WL 2043542, at *7 (Tenn. Ct. App. Aug. 24, 2005)). It is "'something less than a preponderance of the evidence, but more than a scintilla or glimmer.'" *Id.* at 508 (quoting *Wayne Cnty. v. Tenn. Solid Waste Disposal Control Bd.*, 756 S.W.2d 274, 280 (Tenn. Ct. App. 1988)).

The UAPA's narrow standard of review for an administrative body's factual determinations "suggests that, unlike other civil appeals, the courts should be less confident that their judgment is preferable to that of the agency." *Wayne Cnty.*, 756 S.W.2d at 279. This Court cannot displace the agency's judgment as to the weight of the evidence even where there is evidence that could support a different result. *Id.* As this court has previously said:

> "Although hearsay is admissible in administrative hearings, uncorroborated hearsay does not constitute substantial and material evidence." *Estate of Milton v. Comm'r, Tenn. Dep't of Employment Sec.*, No. 03A01-9710-CH-00449, 1998 WL 282919, at *2 (Tenn. Ct. App. May 19, 1998). Thus, "hearsay testimony and documents may be used, if properly qualified for admission, to corroborate other testimony of the wrongful acts

of the claimant, but not as the sole evidence of his or her wrongful acts." ***Johnson v. Neel***, No. 86-150-II, 1986 WL 14039, at *3 (Tenn. Ct. App. Dec.12, 1986).

***Green***, 2007 WL 1731726, at *5. Hearsay has traditionally been viewed with skepticism in our legal system because it is unreliable and unchallengeable:

> By definition, hearsay involves an out-of-court statement used in court to prove the truth of the matter asserted in the out-of-court statement. The primary concern is that the trier of fact will not be able to hear cross-examination of the declarant, who made the out-of-court hearsay statement. In addition, the hearsay declarant's statement is presented to the trier of fact, but the declarant often is not present and therefore not subject to the oath to tell the truth. Another concern is that, since the trier of fact will not be able to observe the demeanor of the declarant, it will be difficult to assess the accuracy of the declarant's statement.

Neil P. Cohen et al., *Tennessee Law of Evidence* § 8.01[3][a] (5th ed. 2005) (footnote omitted). Recognized exceptions to the ban on hearsay exist where the hearsay statements "bear sufficient indicia of reliability and trustworthiness to warrant admission." ***State v. Henry***, 33 S.W.3d 797, 801 (Tenn. 2000). Accordingly, hearsay evidence may be used as substantive evidence of alleged wrongful acts; however, hearsay evidence must be corroborated by other competent evidence.

In this case, the Real Estate Commission called as its first witness Ms. Maxwell, who is an employee of the Real Estate Commission. Ms. Maxwell testified to the complaint that she received from Ms. Smith regarding the allegations at issue in this case. However, Ms. Smith's complaint was neither read into the record, nor submitted as an exhibit at the hearing. Ms. Maxwell also testified, over objection, to statements made by both Ms. Smith and Ms. Bobo in e-mails between the two, in which Ms. Smith sought return of the subject property and Ms. Bobo agreed to work toward a resolution. Ms. Maxwell further testified to her subsequent investigation of Ms. Bobo's licensure status, as well as the legal status of both Global and the subject property. According to Ms. Maxwell, despite Ms. Bobo's assurances via e-mail that she needed only one week to "make this right the easy way," at the time of the hearing, nearly a year later, the property had still not been returned to Ms. Smith. Ms. Bobo objected to Ms. Maxwell's testimony as hearsay. The ALJ appeared to rule that this hearsay was admissible as an admission by a party opponent. *See* Tenn. R. Evid. 803(1.2) (noting that "[a] statement offered against a party that is . . . the party's own statement" does not

constitute hearsay). In the Chancery Court, Ms. Bobo again argued that Ms. Maxwell's statements were largely based on hearsay and that, as such, the Real Estate Commission had no substantial and material evidence on which to base its decision. The Chancery Court agreed and held that "[a]bsent corroboration of Ms. Maxwell's testimony by Ms. Smith, the record lacks substantial evidence of wrongdoing by Ms. Bobo."

On appeal, the Real Estate Commission argues, however, that Ms. Bobo's own admissions may be considered corroborating evidence of Ms. Smith's allegations. We agree. In this case, Ms. Bobo admitted the substance of the relevant allegations against her. We will not tax the length of this Opinion with citations to each factual allegation and a reference to Ms. Bobo's corresponding corroborating testimony. Suffice it to say, we have thoroughly reviewed the record on appeal and we are convinced that the relevant allegations in the Notice of Charges were admitted by Ms. Bobo or corroborated by Ms. Maxwell's own independent investigation.

Ms. Bobo did not deny that she was licensed as a real estate broker during the events at issue in this case. Further, Ms. Bobo admitted that prior to the transaction wherein her company acquired the subject property, she served as the real estate broker for Ms. Smith with regard to Ms. Smith's purchase of the subject property. Ms. Smith did not reside in Tennessee. As such, subsequent to the purchase of the subject property, Ms. Bobo admitted that Ms. Smith hired Ms. Bobo as the property manager for the property, a position Ms. Bobo held until Global acquired the property. Despite this purported position of trust, Ms. Bobo admitted that when Ms. Smith informed Ms. Bobo of her financial difficulties, Ms. Bobo suggested, among other avenues of relief, that Ms. Smith quitclaim the subject property to Ms. Bobo and her partner, for little-to-no-consideration. In her Answer to the Notice of Charges, Ms. Bobo stated that in acquiring the subject property, Global "took all of [Ms. Smith's] liability," including "extensive and expensive repairs, bad tenants, mortgages, city and county taxes, [and] hazard insurance." Ms. Bobo also stated that Ms. Smith fully understood the terms of the Real Estate Broker Act and was free to seek legal counsel. However, Ms. Bobo later admitted in her hearing testimony that despite the "sale" of the property, Ms. Smith remained the only party liable on the mortgage, while Global retained the subject property and all the rental income generated by the property. Ms. Bobo asserted that Ms. Smith was well aware that she would remain liable on the mortgage at the time Ms. Smith transferred the property to Global. This assertion was supported by documentation in the record, in which Ms. Smith acknowledged that she would remain the sole debtor on the mortgages. Also according to Ms. Bobo, Global agreed to pay a total of $10.00 for the subject property, which were worth approximately $60,000.00 at the time they were purchased by Ms. Smith, with Ms. Bobo's help, and approximately $10,000.00 to $15,000.00 at the time the property was transferred to Global. Further, while Ms. Bobo first contended that both Ms. Smith and Ms. Bobo generated the contract used for the sale, Ms. Bobo later

admitted that she had used "a contract that she [i.e., Ms. Bobo] had."

Ms. Bobo also admitted that after Global acquired the property, Global, through the actions of Mr. Horton, missed at least two scheduled payments on the property, which allowed the property to go into default in April of 2011. Although the payments were later made and the creditor never initiated formal foreclosure proceedings, Ms. Bobo admitted that scheduled payments on the property were late approximately 95% to 99% of the time. Regardless, when Ms. Smith received notice that the property was going to go into default, she sought return of the property pursuant to the terms of the contract. Ms. Bobo, however, did not timely return the property. Although Ms. Bobo denied that the return provision of the contract was triggered by the default in the contested hearing, prior to the hearing, Ms. Bobo did not appear to deny that Ms. Smith was entitled to a return on the property. Instead, Ms. Bobo testified that the delay in returning the property was based on conflicts between Mr. Horton and Ms. Smith, and their failure to come to a "meeting of the minds" regarding return of the property. Specifically, in her answer to the Notice of Charges, Ms. Bobo stated that Mr. Horton did not want to "just give up the propert[y] for free" despite the fact that Global had paid little to no consideration to Ms. Smith for the property in the first place.

Ms. Bobo denied that her actions in any way contributed to the default of the subject property. Instead, Ms. Bobo asserted that the default was due to the misappropriation of Mr. Horton, which she neither knew of, nor acquiesced in. Because there was no countervailing proof in the record, we must agree with Ms. Bobo's assertion. However, the Real Estate Commission did not appear to base its decision to sanction Ms. Bobo on the events that led to the mortgage default of the property. Instead, the Real Estate Commission considered the transaction in which Global acquired the property and the conflict of interest between Ms. Bobo's fiduciary duty as a property manager for Ms. Smith and her interest in the transaction. The Commission further considered Global's continuing failure to make timely payments on the property, and Ms. Bobo's actions in refusing to return the property to Ms. Smith, despite her request for its return pursuant to the contract. According to Commissioner Austin McMullen:

> I think that the testimony we heard, the proof that we heard, established that [Ms. Bobo] was acting as an agent for [Ms. Smith] at the time of the management agreement between East Coast Properties, LLC, and [Ms. Smith]. And during that time [Ms. Bobo] negotiated a contract with [Ms. Smith] to transfer these properties over, which included a promise that she could quit claim the properties back on request if the mortgage wasn't paid. [Ms. Bobo] knew at that time that she couldn't do that on her own because she had an agreement for a partnership

that said that she couldn't do that without getting her partner's signature on it. Ultimately, the loans—there were defaults, the loans were not paid. [Ms. Smith] asked for the money back—excuse me—asked for the property to be quit claimed back. That never happened.

And so to me, it looks like [Ms. Bobo] breached her duty of loyalty set forth in the statute, and also to negotiate a price of $10 for these properties when the testimony was they were worth at least $10,000 to $15,000 and that they had been bought, I think, a year before at $60,000, is just really hard to believe somebody would do that, and I think that the respondent did breach her duty of loyalty.

Commissioner Wendall Alexander further explained:

Here's a lady that's been a broker, been a principal broker, owned her own companies, been with . . . other folks . . . . Surely to goodness in 12 years or however long she's been licensed, of the people whose hands she passed through, she would have picked up a little something about representing and not taking advantage of folks. Willful.

The money part doesn't bother me about what she's tried to make on a profit, but when you ask and you convince somebody that's not familiar with basic Tennessee law and other things, quit claim your property, and not tell them —or if you did tell them, and you can conceivably, ma'am, with a set of licenses that represents the public—this Commission is here to protect the public, not to protect you as a licensee. We're here to protect the people that we represent.

Your obligation was to protect your client, who was the woman you sold these houses to. You sold them to her. You come back and you let them quit claim them. You let her be liable for the mortgage when go into a short sale. . . .

Accordingly, any hearsay evidence that was submitted through the testimony of Ms. Maxwell was fully corroborated by Ms. Bobo, either through her own testimony or her Answer to the Notice of Charges.

The Notice of Charges charged Ms. Bobo with violating several provisions of the Real

Estate Broker Act. First, as previously discussed, Ms. Bobo was charged with violating Tennessee Code Annotated Section 62-13-312(b), which provides, in relevant part:

> The commission shall have the power to refuse a license for cause or to suspend or revoke a license where it has been obtained by false representation or by fraudulent act or conduct, or where a licensee, in performing or attempting to perform any of the acts mentioned herein, is found guilty of:
>
> (1) Making any substantial and willful misrepresentation;
>
> (2) Making any promise of a character likely to influence, persuade or induce any person to enter into any contract or agreement when the licensee could not or did not intend to keep the promise;
>
>            \*   \*   \*
>
> (14) Violating any provision of this chapter, any rule duly promulgated and adopted under this chapter or the terms of any lawful order entered by the commission;
>
>            \*   \*   \*
>
> (20) Any conduct, whether of the same or a different character from that specified in this subsection (b), that constitutes improper, fraudulent or dishonest dealing; . . . .

The Real Estate Commission apparently found that Ms. Bobo had violated the above provisions in inducing Ms. Smith to enter into an admittedly "unconscionable" contract in which Ms. Smith was paid little-to-no consideration for property she owned and she remained the only party to the mortgage, while Ms. Bobo and Global gained a substantial benefit. Further, the Real Estate Commission found that Ms. Bobo committed a willful misrepresentation and dishonest dealing in promising to return the subject property to Ms. Smith within thirty to sixty days if scheduled payments were not made and then subsequently refusing to do so, until the eve of trial.[5] While some of the Commissioners appeared to disagree that Global was required by the terms of the contract to return the property for

_____

[5] Even though Ms. Bobo testified that she had agreed prior to the contested hearing to return the property, at the time of the hearing, she had still not done so.

simple non-payment or late payment, a majority of the Real Estate Commission concluded that the language in the contract between Global and Ms. Smith, required the return of the property under these circumstances. The contract specifically provides that:

> If . . . the buyer for any reason refuses to make the agreed scheduled monthly payments on the said loan or for any reason in the future decide[s] it is not in their best interest to continue to make monthly payments it is agreed that Global [] will sell, release, remise, quit claim, and convey to [Ms.] Smith all right, title and interest within 30-60 days.

The majority of the Real Estate Commission based its decision on the requirement that Global make "scheduled" payments on the mortgage, which the Commissioners construed as requiring timely payment. Because Ms. Smith admitted that Global failed to make timely payments on the loan the majority of the time, and at one point, allowed the mortgage on the property to default, which Ms. Bobo admitted placed Ms. Smith in a "vulnerable position," the Real Estate Commission's decision that her action in refusing to timely return the property was a violation of the Real Estate Act is based upon substantial and material evidence.

The Real Estate Commission also found that Ms. Bobo violated the Real Estate Broker Act by breaching her duty of loyalty to Ms. Smith in purchasing the subject property when Ms. Smith was in a vulnerable position. As set forth in the Real Estate Commission's final order, Ms. Bobo was charged with violating Tennessee Code Annotated Section 62-13-404, which provides, in pertinent part:

> Any licensee who acts as an agent in a transaction regulated by this chapter owes to the licensee's client in that transaction the following duties, to:
>
> \* \* \*
>
> (2) Be loyal to the interests of the client. A licensee must place the interests of the client before all others in negotiation of a transaction and in other activities, except where the loyalty duty would violate licensee's duties to a customer under § 62-13-402 or a licensee's duties to another client in a dual agency; . . . .

Here, the Real Estate Commission unanimously voted that Ms. Bobo was not loyal to the interests of Ms. Smith, who remained her client. As previously discussed, Ms. Bobo admitted

that she: (1) suggested that Ms. Smith sell her property to Ms. Bobo for little to no consideration; (2) provided the contract upon which the transaction was based: (3) gained legal title of the property, which was worth far more than the consideration agreed to be paid; (4) was expected to make an unconscionable profit on the transaction; and (4) refused to return the property when Ms. Smith sought its return pursuant to the contract. As set forth in Commissioner McMullen's statements above, the Real Estate Commission concluded that these actions were taken in violation to Ms. Bobo's duty of loyalty to Ms. Smith. From our review of the record, substantial and material evidence, specifically Ms. Bobo's own admissions, as well as the contract between Ms. Bobo and Ms. Smith, the terms of which were undisputed, support the Real Estate Commission's decision on this issue.

Further, we decline to accept Ms. Bobo's argument that she may not be found to have breached the Real Estate Broker Act in this transaction because she was acting as a purchaser rather than an agent in this transaction. It is undisputed that Ms. Bobo served both as a real estate broker and a property manager for Ms. Smith prior to the events at issue. Indeed, Ms. Bobo admitted that she was the property manager for Ms. Smith with regard to the subject property at the time Global acquired the property. The fact that Ms. Bobo decided to purchase the property did not absolve Ms. Bobo of her duty to Ms. Smith. In a similar case, **Bell v. Gailey**, 37 Tenn. App. 17, 260 S.W.2d 300 (Tenn. Ct. App. 1952), the broker "switch[ed] his position from that of a confidential agent to that of a purchaser." *Id.* at 303. The Court held that the broker still owed a duty to the seller, notwithstanding the "switch."

> Equity will not tolerate such a deal. As the Chancellor pointed out, it is not possible, and we may add, it is not necessary, to determine just when the defendant switched from his status of real estate broker to that of purchaser. There is no question but what on both occasions, he was consulted by the complainant in his capacity as a broker and that in that capacity he undertook to advise her about the loan and later about the sale of the property. There was thus established a confidential relationship which amounted to a trust, and such a relationship once assumed continues until discharged either by operation of law, by an order of a tribunal having the requisite jurisdiction, or pursuant to a valid agreement of the parties in interest who are fully competent to contract and fully conversant with all the facts and with their respective rights and duties.

*Id.* (citing **Wilson v. Hayes**, 29 Tenn. App. 49, 193 S.W.2d 107 (Tenn. Ct. App. 1945)). Accordingly, despite the fact that Ms. Bobo was the purchaser of the real estate in this transaction, she was still required to act in accordance with the Real Estate Broker Act.

Likewise, any agreement that Ms. Bobo and Ms. Smith may have entered into prior to the contested hearing has no bearing on whether Ms. Bobo violated the Real Estate Broker Act.

### Due Process

The Real Estate Commission next argues that the Real Estate Commission's consideration of hearsay evidence did not violate Ms. Bobo's due process rights. As discussed by this Court in *Martin v. Sizemore*, 78 S.W.3d 249 (Tenn. Ct. App. 2001):

> The threshold consideration with regard to any procedural due process claim is whether the plaintiff has a liberty or property interest that is entitled to protection under U.S. Const. amend. XIV, § 1 and Tenn. Const. art. I, § 8. *Rowe v. Board of Educ.*, 938 S.W.2d 351, 354 (Tenn.1996); Armstrong v. Department of Veterans Affairs, 959 S.W.2d at 597–98. To qualify for constitutional protection, a property interest must be more than a "unilateral expectation" or an "abstract need or desire." It must be a "legitimate claim of entitlement" created and defined by "existing rules or understandings that stem from an independent source such as state law." *Board of Regents v. Roth*, 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972); *Rowe v. Board of Educ.*, 938 S.W.2d at 354; *Eye Clinic, P.C. v. Jackson-Madison County Gen. Hosp.*, 986 S.W.2d at 578.

> \* \* \*

> A professional license, issued by a State, which can be suspended or revoked only upon a showing of cause is a constitutionally protectable property interest because the holder of the license has a clear expectation that he or she will be able to continue to hold the license absent proof of culpable conduct. *Barry v. Barchi*, 443 U.S. 55, 64 & n. 11, 99 S.Ct. 2642, 2649 & n. 11, 61 L.Ed.2d 365 (1979). Our courts have already recognized that the practice of medicine, dentistry, and chiropractic, as well as working as a licensed pest control operator, are protectable interests in property. *Estrin v. Moss*, 221 Tenn. 657, 674, 430 S.W.2d 345, 352 (1968) (pest control operators); *Prosterman v. Board of Dental Exam'rs*, 168 Tenn. 16, 22, 73 S.W.2d 687, 690 (1934) (practice of dentistry); *State*

**Bd. of Med. Exam'rs v. Friedman**, 150 Tenn. 152, 166, 263 S.W. 75, 79 (1924) (practice of medicine); **Janeway v. State Bd. of Chiropractic Exam'rs**, 33 Tenn.App. 280, 286, 231 S.W.2d 584, 587 (1950) (practice of chiropractic).

**Martin v. Sizemore**, 78 S.W.3d at 262–63. There is no dispute in this case that Ms. Bobo's interest in continuing to practice in Tennessee as a licensed real estate broker is a property interest entitled to procedural due process protection under the Due Process Clause of the Fourteenth Amendment and the Tennessee Constitution art. I, § 8. Accordingly, Ms. Bobo was entitled to the protections of procedural due process.

As explained by this Court:

> Procedural due process does not require perfect, error-free governmental decision-making. **Mackey v. Montrym**, 443 U.S. 1, 13, 99 S.Ct. 2612, 2618, 61 L.Ed.2d 321 (1979); **Eye Clinic, P.C. v. Jackson-Madison County Gen. Hosp.**, 986 S.W.2d at 578. It does, however, require affording persons like [Ms. Bobo] a relatively level playing field in a contested case hearing. The state should not be permitted to maintain such an unfair strategic advantage that a pall is cast over the fairness of the proceeding. *In re Detention of Kortte*, 317 Ill.App.3d 111, 250 Ill.Dec. 514, 738 N.E.2d 983, 986 (2000). Thus, due process demands a fair trial before a neutral or unbiased decision-maker. **Bracy v. Gramley**, 520 U.S. 899, 904–05, 117 S.Ct. 1793, 1797, 138 L.Ed.2d 97 (1997); **Withrow v. Larkin**, 421 U.S. 35, 46, 95 S.Ct. 1456, 1464, 43 L.Ed.2d 712 (1975); **Ogrodowczyk v. Tennessee Bd. for Licensing Health Care Facilities**, 886 S.W.2d 246, 252–53 (Tenn. Ct. App. 1994) (Cantrell, J., concurring); 2 Kenneth C. Davis & Richard J. Pierce, Jr., Administrative Law Treatise § 9.8 (3d ed. 1994) ("Administrative Law Treatise"). It also demands an appearance of fairness and the absence of probability of outside influence on the adjudication. **Utica Packing Co. v. Block**, 781 F.2d 71, 77–78 (6th Cir.1986).

**Martin**, 78 S.W.3d at 264. The UAPA also contains specific provisions with regard to notice in administrative proceedings. *See* Tenn. Code Ann. §4-5-307(a) (discussed in detail, *supra*). Accordingly, the **Martin** Court held that due process in administrative proceedings requires: (1) "adequate notice" of the proceedings pursuant to the UAPA; (2) "an opportunity for a

hearing at a meaningful time and in a meaningful manner[;]" and (3) "an opportunity to obtain judicial review of the board's or agency's decision." **Martin**, 78 S.W.3d at 267 (citations omitted).

In this case, other than the allegation concerning the Notice of Charges, considered *supra*, there is no allegation that Ms. Bobo did not have adequate notice of the proceedings or that she had no opportunity to obtain judicial review. Instead, Ms. Bobo argues that she was not afforded an opportunity for a hearing in a meaningful manner because she was not allowed to confront Ms. Smith as a witness against her. In **Patterson v. Hunt**, 682 S.W.2d 508 (Tenn. Ct. App.1984), the petitioners made a similar argument regarding their inability to confront the witnesses against them. ***Id.*** at 516. The Court of Appeals, however, affirmed the administrative body's finding, ruling that because the petitioners: (1) admitted that the allegations were true; (2) were allowed a hearing, and (3) were allowed to present evidence in their defense, though they chose not to exercise this right, the petitioners' due process rights were not violated. ***Id.*** at 516–17.

Similarly in this case, as previously discussed, Ms. Bobo admitted the relevant factual allegations against her. She only took issue with the conclusions to be drawn from those facts. *See* **Allen v. City of Greensboro**, 452 F.2d 489, 490 (4th Cir. 1971) (noting that confronting a witness "is of little help" to a party who would corroborate the witness's statement). Ms. Bobo was also given adequate notice of the hearing date and the allegations against her. Further, from our review of the record, it was Ms. Bobo who submitted evidence to the Real Estate Commission that Ms. Smith would not testify at the hearing. Indeed, counsel for Ms. Bobo filed a pretrial Motion to Dismiss the Notice of Charges on the basis that Ms. Smith no longer wanted to pursue the matter or testify.[6] Accordingly, Ms. Bobo had notice prior to the hearing that Ms. Smith would not testify. However, Ms. Bobo took no action to continue the hearing or force Ms. Smith to testify. In her brief, Ms. Bobo asserts that the trial court was correct in finding that her due process rights were violated by the Real Estate Commission's failure to call Ms. Smith as a witness because it was the Real Estate Commission's burden to prove that Ms. Bobo violated the Real Estate Broker Act. According to Ms. Bobo, the Real Estate Commission's failure to call a complaining witness was fatal to its case. We respectfully disagree. The Real Estate Commission called Ms. Bobo as a witness in its case-in-chief. As previously discussed, Ms. Bobo admitted the relevant factual

---

[6] In her brief, Ms. Bobo states that she "went to the hearing under the belief that she would be able to cross-examine [Ms.] Smith her accuser." However, the record shows that Ms. Bobo filed both a pretrial motion implying that Ms. Smith would not testify and renewed this motion at the start of the contested hearing, arguing that the case should be dismissed because Ms. Smith "would be unavailable for testimony." Accordingly, Ms. Bobo's assertion that she had no notice that Ms. Smith would not testify until she arrived for the hearing is patently false.

allegations against her. Thus, the Real Estate Commission met its burden to show, by competent evidence, that Ms. Bobo violated the Real Estate Broker Act. Accordingly, if Ms. Bobo wished to rebut those charges, she was under the obligation to present her own evidence for that purpose. In a somewhat similar case, **Wright v. Tenn. Bd. Of Examiners in Psychology**, No. M2003-01654-COA-R3-CV, 2004 WL 3008881 (Tenn. Ct. App. Dec. 28, 2004), *perm. app. denied*, (June 27, 2005), the Court of Appeals upheld an agency's decision to sanction a psychologist despite the fact that the complaining witness declined to testify at the contested hearing. *Id.* at \*7. Instead, the defendant psychologist largely admitted the factual allegations against him. *Id.* at \*2, \*8. The Court held that such admissions were competent evidence to meet the agency's burden of production and persuasion. *Id.* at \*8. Finally, Ms. Bobo was allowed to present evidence and witnesses on her behalf, though she chose to call no witnesses. Under these circumstances, like in **Patterson**, there was no violation of Ms. Bobo's due process rights. **Patterson**, 682 S.W.2d at 516–17.[7]

## Consent Order

The Real Estate Commission next argues that the Chancery Court erred in finding that the Real Estate Commission acted improperly, and with evident partiality, in considering a consent order that Ms. Bobo refused to agree to prior to the contested hearing. It is undisputed that the Real Estate Commission offered a settlement to Ms. Bobo in which her license was to be suspended for twelve months and Ms. Bobo was to pay a civil penalty of $5,000.00. Ms. Bobo, however, never signed the consent order. Ms. Bobo argued in the Chancery Court and on appeal that the Real Estate Commission's consideration of Ms. Bobo's refusal to agree to the consent order "demonstrated a serious lack of impartiality" on the part of the Real Estate Commission.

---

[7] Although it is not argued in her brief to this Court, we note that Ms. Bobo made an additional argument in the Chancery Court that the Real Estate Commission was not entitled to permanently revoke her real estate license without expert testimony to indicate that she breached the professional standard of care, citing **Martin v. Sizemore**, 78 S.W.3d 249 (Tenn. Ct. App. 2001). In **Martin**, the Court of Appeals held when the "issues in the administrative proceeding require establishing the applicable standards of professional conduct and determining whether particular conduct fell below these standards," expert testimony is required to be introduced by the Real Estate Commission to meet its burden to suspend or revoke a professional license. *Id.* at 271. The Court further held, however, that when the grounds for disciplinary action do not involve deviations from the professional standard of care, no expert testimony is required. See *id.* at 268 (noting that some grounds for disciplinary action "involve conduct and issues easily understood by persons who are not themselves" members of the subject profession). In an abundance of caution, we have considered the grounds at issue in this case and conclude that they "involve conduct and issues easily understood by persons who are not themselves" real estate brokers. Accordingly, the Real Estate Commission was not required to introduce expert testimony to support its allegations in this case.

In the first instance, we note that when a Commissioner questioned Ms. Bobo and Ms. Maxwell concerning the proposed consent order, Ms. Bobo, through her counsel, failed to object to the consideration of this evidence, nor did Ms. Bobo seek a limiting instruction preventing the Real Estate Commission from considering this evidence with regard to the penalty it imposed. A party claiming that evidence has erroneously been admitted may not predicate error on the ruling unless "a timely objection or motion to strike appears of record," stating the specific ground. Tenn. R. Evid. 103(a)(1). Further, "[n]othing in [Tennessee Rule of Appellate Procedure 36] shall be construed as requiring relief be granted to a party responsible for an error or who failed to take whatever action was reasonably available to prevent or nullify the harmful effect of an error." Tenn. R.App. P. 36(a). "It is well-settled that the failure to raise a contemporaneous objection to the admission of evidence at the time the evidence is introduced at trial results in waiver of the particular issue on appeal." *McGarity v. Jerrolds*, No. W2013-00250-COA-R3-CV, 2013 WL 4675934, at 3 (Tenn. Ct. App. Aug. 27, 2013), *perm. app. denied* (Feb. 24, 2014). "A party who invites or waives error, or who fails to take reasonable steps to cure an error, is not entitled to relief on appeal." *State Dept. of Children's Services v. V.N.*, 279 S.W.3d 306, 319 (Tenn. Ct. App. 2008) (citing *Grandstaff v. Hawks*, 36 S.W.3d 482, 488 (Tenn. Ct. App. 2000) (citations omitted)). Nothing in the record suggests that Ms. Bobo made any objection or motion to strike the evidence regarding the consent order. Accordingly, any argument that this evidence was wrongly admitted or considered is waived.

Further, we conclude that the Real Estate's Commission's knowledge and consideration of this consent order does not demonstrate "a serious lack of impartiality" on the part of the Real Estate Commission. First, we note that the UAPA encourages administrative agencies, such as the Real Estate Commission, to attempt to resolve matters informally. Tennessee Code Annotated Section 4-5-105 provides:

> Except to the extent precluded by another provision of law, informal settlement of matters that may make unnecessary more elaborate proceedings under this chapter is encouraged. Agencies may establish specific procedures for attempting and executing informal settlement of matters. This section does not require any party or other person to settle a matter pursuant to informal procedures.

The Chancery Court held that the "Commissioners demonstrated a serious lack of impartiality at the time of the hearing, having already evaluated the claim and authorized a resolution of the matter." Respectfully, we disagree. Tennessee Code Annotated Section 4-5-105 clearly authorizes, and in fact encourages, administrative agencies to offer consent orders to respondents in order to facilitate the resolution of investigations without the time and

-25-

expense of a contested hearing. Thus, the fact that the Commission had previously "authorized a resolution of the matter" through the use of a consent order is not sufficient to conclude that the Real Estate Commission lacked impartiality.

Further, the Real Estate Commission's knowledge and consideration of the terms of the consent order, which evidence was not objected to, does not mandate recusal of the panel members of the Real Estate Commission. The Real Estate Commission, like other administrative agencies, must serve multiple roles. Recently, the Tennessee Supreme Court considered the "overlapping" roles of administrative agencies in *Moncier v. Board of Professional Responsibility*, 406 S.W.3d 139 (Tenn. 2013). In *Moncier*, the defendant attorney argued that the Board of Professional Responsibility ("the Board") erred in denying his recusal motions, which were based on the defendant attorney's multiple lawsuits filed against the Board and its Chief Disciplinary Counsel. *Id.* at 159. The defendant attorney argued that his recusal motions were governed by the recusal rules applicable to judges. The Tennessee Supreme Court disagreed, citing the multiple roles that an administrative agency must fill. According to the Court:

> Unlike a judicial system, in which investigative, prosecutorial, and adjudicative functions are separate, some overlapping of these functions is inherent in administrative agencies, like the Board. *See Withrow v. Larkin*, 421 U.S. 35, 54–55, 95 S.Ct. 1456, 43 L.Ed.2d 712 (1975) (discussing the overlapping investigatory and adjudicatory functions administrative agencies may perform); *Heyne*, 380 S.W.3d at 735 (discussing the overlapping functions performed by school boards in Tennessee). The Board simply is not a judicial system; thus, a Board member is not an officer of a judicial system.

*Moncier*, 406 S.W.3d at 159.

The Tennessee Supreme Court further ruled that although it could choose to apply the judicial recusal rules to recusal of administrative panels, it declined to do so. The Court concluded that neither constitutional mandates nor practical considerations weighed in favor of applying the strict judicial recusal rules to the recusal of administrative panel members:

> [N]o constitutional principle mandates their application to administrative adjudicators. *See, e.g., Petrowski v. Norwich Free Acad.*, 199 Conn. 231, 506 A.2d 139, 142–43 (1986) ("The applicable due process standards for disqualification of administrative adjudicators do not rise to the heights of those

prescribed for judicial disqualification."); John L. Gedid, *ALJ Ethics: Conundrums, Dilemmas, and Paradoxes*, 11 Widener J. Pub.L. 33, 53 (2002) ("Courts deciding due process claims have recognized that due process does not require the same standard for Article III judges and ALJs because their status, role, and functions are different. The avoidance of the appearance of bias standard is particularly unsuitable in administrative proceedings."). Indeed, as the Connecticut Supreme Court has aptly explained, many practical considerations weigh against doing so.

> The canons of judicial ethics go far toward cloistering those who become judges, the ultimate arbiters of constitutional and statutory rights, from all extraneous influences that could even remotely be deemed to affect their decisions. Such a rarefied atmosphere of impartiality cannot practically be achieved where the persons acting as administrative adjudicators, whose decisions are normally subject to judicial review, often have other employment or associations in the community they serve. It would be difficult to find competent people willing to serve, commonly without recompense, upon the numerous boards and commissions in this state if any connection with such agencies, however remotely related to the matters they are called upon to decide, were deemed to disqualify them. Neither the federal courts nor this court require a standard so difficult to implement as a prerequisite of due process of law for administrative adjudication.

*Petrowski*, 506 A.2d at 143; *see also* ***V-1 Oil Co. v. Dep't of Envtl. Quality***, 939 P.2d 1192, 1200 (Utah 1997) ("The paralysis of basic governmental functions and the overwhelming expense caused by imposition of an uncompromising judicial model of complete structured independence of the adjudicator would have disastrous consequences for many essential governmental programs and functions.").

*Moncier*, 406 S.W.3d at 160–61. Thus, the Tennessee Supreme Court held that strict judicial recusal rules are inapplicable in administrative proceedings.

The Court recognized, however, that a respondent in an administrative proceeding has the right to a "meaningful hearing" and that, consequently, the respondent is entitled to "a fair trial before a fair tribunal." *Id.* at 161. Accordingly, the Court held that recusal is sometimes an appropriate remedy in an administrative proceeding, but that the rules applicable to disqualification in an administrative hearing are more exacting than in the judicial setting due to the multiple roles filled by the administrative agency. *Id.* at 161–62. As the Court explained:

> This does not mean, however, that a [panel] member is never subject to disqualification. A basic requirement of due process is a fair trial before a fair tribunal, and this principle applies to administrative adjudicators as well as to courts. *Withrow*, 421 U.S. at 46–47, 95 S.Ct. 1456; *Gibson v. Berryhill*, 411 U.S. 564, 579, 93 S.Ct. 1689, 36 L.Ed.2d 488 (1973); *Heyne*, 380 S.W.3d at 734–35 (explaining that for an administrative hearing "to be 'meaningful' in the constitutional sense, it must employ a decision-maker or decision-makers who are unbiased"); *Cooper v. Williamson Cnty. Bd. of Educ.*, 803 S.W.2d 200, 202 (Tenn .1990) ("It is axiomatic that due process requires the opportunity of the party charged to be heard at a meaningful time and in a meaningful manner, before an impartial tribunal.").
>
> For purposes of constitutional due process, however, administrative adjudicators are afforded a presumption of honesty and integrity. *See Withrow*, 421 U.S. at 47, 95 S.Ct. 1456. This presumption may be overcome by showing that an administrative adjudicator has a pecuniary interest in the outcome of the proceeding, or has been the target of personal abuse or criticism from the party before him, *id.*, or has a conflict of interest, *see Gibson*, 411 U.S. at 578–79, 93 S.Ct. 1689. This presumption may also be overcome by showing that the "probability of actual bias" in a particular case on the part of the administrative decision-maker is "too high to be constitutionally tolerable." *Withrow*, 421 U.S. at 47, 95 S.Ct. 1456. The burden of establishing a disqualifying interest rests on the party seeking disqualification. *Schweiker v. McClure*, 456 U.S. 188, 196, 102 S.Ct. 1665, 72 L.Ed.2d 1 (1982).

When an assertion of bias is premised solely on an administrative adjudicator's exercise of both investigative and adjudicative functions, the party making the contention must show that, "under a realistic appraisal of psychological tendencies and human weakness, conferring investigative and adjudicative powers on the same individuals poses such a risk of actual bias or prejudgment that the practice must be forbidden if the guarantee of due process is to be adequately implemented." **Withrow**, 421 U.S. at 47, 95 S.Ct. 1456. "[A]ny form of function combination, occurring alone and without other exacerbating biasing influences, is very unlikely to run afoul of procedural due process." **Martin v. Sizemore**, 78 S.W.3d 249, 265 (Tenn. Ct. App. 2001). As the Court of Appeals explained in **Martin**:

> A combination of prosecutorial and adjudicative functions is the most problematic combination for procedural due process purposes. A prosecutor, by definition, is a partisan advocate for a particular position or point of view. The role is inconsistent with the objectivity expected of administrative decision-makers. Accordingly, to permit an advocate for one party to act as the legal advisor for the decision-maker creates a substantial risk that the advice given to the decision-maker will be skewed. However, the risk of bias becomes intolerably high only when the prosecutor serves as the decision-maker's advisor in the same or a related proceeding.

78 S.W.3d at 265 (internal citations omitted); *see also* **Heyne**, 380 S.W.3d at 735 (holding in a school disciplinary proceeding that a school official's dual role of prosecutor and decision-maker did not without more rise to the level of a violation of due process); *see also* **People v. Varallo**, 913 P.2d 1, 5 (Colo. 1996) (collecting cases that apply this principle in the attorney disciplinary context); **Goldstein v. Comm. on Practice of the Supreme Court**, 297 Mont. 493, 498–501, 995 P.2d 923 (2000) (same); *cf.* **Marshall v. Jerrico, Inc.**, 446 U.S. 238, 250, 100 S.Ct. 1610, 64 L.Ed.2d 182 (1980) ("[T]he strict

requirements of neutrality cannot be the same for administrative prosecutors as for judges, whose duty it is to make the final decision and whose impartiality serves as the ultimate guarantee of a fair and meaningful proceeding in our constitutional regime.").

*Moncier*, 406 S.W.3d at 161–62.

Here, the Real Estate Commission is tasked with multiple functions, among them, the task of promulgating and adopting rules and regulations, *see* Tenn. Code Ann. § 62-13-203(a), the task of investigating complaints made to the Real Estate Commission, *see* Tenn. Code Ann. § 62-13-203(a), the task of authorizing the informal settlement of matters under its investigation, *see* Tenn. Code Ann. § 4-5-105, the task of granting real estate broker licenses, *see* Tenn. Code Ann. § 62-13-312(b), and the task of holding hearings to determine whether an individual has violated provisions of the Real Estate Broker Act, and what sanctions should be imposed for that violation. *See* Tenn. Code Ann. §62-13-312(a), (b). As we perceive it, Ms. Bobo is arguing that the Real Estate Commission was biased because it questioned her, without objection, regarding the previous consent order offered to her. As previously discussed, the Real Estate Commission was fully authorized to act in that capacity by the UAPA. *See* Tenn. Code Ann. § 4-5-105. Thus, Ms. Bobo is essentially arguing that the Real Estate Commission was biased by information it learned in performing both its investigative and adjudicative functions.

First, we note that the information related to the consent order was fully admitted by Ms. Bobo, during the hearing, without objection. Thus, there is no indication that the Real Estate Commission was privy to any extrajudicial information, that it then relied on in considering Ms. Bobo's culpability. Even under the more stringent judicial review standard, not every bias, partiality, or prejudice requires recusal: "To disqualify, prejudice must be of a personal character, directed at the litigant, '**must stem from an extrajudicial source** and result in an opinion on the merits on some basis other than what the judge learned from . . . participation in the case.'" *Alley v. State*, 882 S.W.2d 810, 821 (Tenn. Crim. App. 1994) (quoting *State ex rel. Wesolich v. Goeke*, 794 S.W.2d 692, 697 (Mo. Ct. App. 1990) (emphasis added)). There is simply no indication in the record that the Real Estate Commission's decision was based upon anything other than the evidence presented at the contested case hearing. Further, in her brief, Ms. Bobo also takes issue with Commissioner Alexander's action in "personally scold[ing]" Ms. Bobo with regard to her actions in this case, as set forth in full context above. According to Ms. Bobo, this action demonstrates that Commissioner Alexander "was biased or prejudice[d] against Ms. Bobo, and, therefore, could not set aside his personal bias and conduct a fair hearing in a fair manner." Again, nothing in the record indicates that Commissioner Alexander's remarks were prompted by

extrajudicial information, rather than evidence properly introduced at the hearing. Thus, Commissioner Alexander's remarks are insufficient to support a conclusion that either he or any of the other Commissioners were biased against Ms. Bobo.

Further, as noted by the Tennessee Supreme Court, "[A]ny form of function combination, occurring alone and without other exacerbating biasing influences, is very unlikely to run afoul of procedural due process." *Moncier*, 406 S.W.3d at 161 (quoting *Martin*, 78 S.W.3d at 265). In this case, Ms. Bobo's assertions regarding bias largely stem from the Real Estate Commission's dual functions as an investigator and adjudicator. Ms. Bobo has not shown that any of the Commissioners have a pecuniary interest in the outcome of the proceeding, have a conflict of interest with Ms. Bobo, or have been the target of personal abuse or criticism from Ms. Bobo. *Moncier*, 406 S.W.3d at 162. Under these circumstances, and considering the record as a whole, we must conclude that the "probability of actual bias" is not "too high to be constitutionally tolerable." *Id.* (quoting *Withrow*, 421 U.S. at 47, 95 S.Ct. 1456). Accordingly, the Chancery Court erred in finding that the Real Estate Commission "demonstrated a serious lack of impartiality."

## Conclusion

Based on the foregoing, we conclude that the Chancery Court erred in reversing the decision of the Real Estate Commission. Instead, we hold that the Real Estate Commission: complied with applicable constitutional and statutory provisions and that its decision was: (1) made upon lawful procedure; (2) neither arbitrary nor capricious or characterized by an abuse of discretion; and (3) supported by substantial and material evidence. Tenn. Code Ann. § 4-5-322(h). Accordingly, we reverse the decision of the Davidson County Chancery Court and affirm the decision of the State of Tennessee Real Estate Commission. This cause is remanded to the trial court for all further proceedings as are necessary and are consistent with this Opinion. Costs of this appeal are assessed to Appellee Donna Bobo, for which execution may issue, if necessary.

_____
J. STEVEN STAFFORD, JUDGE